EDWIN J. GOULD, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 29284.)

Court of Claims, October 17, 1949.

*Samuel L. Greenberg* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Arthur W. Matt-son* and *Sidney B. Gordon* of counsel), for defendant.

LOUNSBERRY, P. J. On March 28, 1946, the claimant, Edwin Joseph Gould, then an inmate of Clinton Prison, a State prison at Dannemora, New York, was assigned to a work gang under the supervision of prison guard John M. Stow. Stow's gang and another gang, supervised by guard Irving J. Dukette, were engaged in the demolition of a building on prison grounds, and on that particular day were breaking down its foundation, which consisted of granite blocks. Gould was assigned to loosening the blocks with a crowbar, which proved difficult, whereupon Stow instructed him to use a sledgehammer. He secured a sledgehammer from an inmate who had charge of the tool box, climbed down into the hole where the work was proceeding and began striking the blocks with the hammer. Very shortly afterwards, he was struck in the eye by what subsequently proved to be a metallic chip, evidently from the head of the sledgehammer. He lost the sight of the eye and eventually it was removed.

Claimant urges that under section 241 of the Labor Law and rule 23–3.18 of the Rules Relating to the Protection of Persons Employed in the Erection, Repair and Demolition of Buildings or Structures, promulgated by the Board of Standards and Appeals, New York State Department of Labor (3 N. Y. Official Compilation of Codes, Rules & Regulations, p. 657), the State was under a positive duty to provide him with, and require him to use, goggles while engaged in striking the granite stones with the sledgehammer; that it violated that duty; and for such violation must respond in damages for the ensuing injury. He correctly asserts that where a violation of a duty imposed by statute occurs, liability is predicated on the violation, not on negligence, and, hence, that the defenses of contributory negligence and assumption of the risk are not available. Any doubt that this was the rule in New York was definitely removed by the decision in *Koenig* v. *Patrick Constr. Corp.* (298 N. Y. 313) which concerned a violation of the safe ladder requirements of section 240 of the Labor Law.

Actually, section 241 contains no specific requirement with respect to goggles. Its only relevant provision, subdivision 7, simply states: " 7. The board of standards and appeals may make rules to provide for the protection of workmen in connection with the excavation work for the construction of buildings, the work of constructing or demolishing buildings and structures, and the guarding of dangerous machinery used in connection therewith, and the owners and contractors for such work shall comply therewith."

Rule 23–3.18, presumably adopted under authority of the foregoing subdivision, is more specific. It provides: " 23–3.18. *Eye protection*. Approved type goggles shall be provided for and shall be used by workmen employed in welding or cutting operations, or in chipping, cutting or grinding any material from which particles may fly, or while engaged in any other operation which may endanger the eyes."

While this rule does not refer specifically to the particular work in which claimant was engaged, one may fairly conclude that it is included. It is common knowledge that stone struck by a sledgehammer may chip and fly about, and that the head of the tool itself may likewise chip or splinter and similarly fly. Unquestionably the rule was intended to prevent injuries from such occurrences.

There is dispute as to whether goggles were offered to the claimant. He asserts very positively that they were not offered. Guard Dukette testified that he proffered them but that the claimant declined them. Guard Stow testified that he saw Dukette make the offer. It is rather odd, however, that neither guard, in his written report of the accident, made the following day, mentioned the goggle incident, although it was obviously relevant. Neither seems to have recollected it until nearly three years later, upon examination before trial. In any event, the offer, if made, was obviously perfunctory. There is no indication of any effort to explain the need to claimant, who was inexperienced in the work, or to insist that he use the goggles, and the same must have been true of the other members of the gangs, for none of them wore goggles. Such procedure was certainly insufficient compliance with the rule, if applicable.

Generally, however, the State is not bound by any statute whereby its sovereignty would be derogated or its rights and interest divested, save by specific provision or unmistakable legislative intent to the contrary. (*Denton* v. *State of New York*, 72 App. Div. 248; *Jewish Hospital of Brooklyn* v. " *John Doe* ", 252 App. Div. 581.) Applying this principle, this court has already twice held that the Labor Law (and hence, of course, rules promulgated under its authority) does not apply to the State in its relations to inmates of its various institutions. (*Beale* v. *State of New York*, 46 N. Y. S. 2d 824; *Lee* v. *State of New York*, 187 Misc. 268.) The decisions in *Robinson* v. *State of New York* (242 App. Div. 94) and *Revelant* v. *State of New York* (165 Misc. 798) are not contrary, since both arose under special enabling statutes which required the court to apply the Labor Law to the State in those particular cases.

*Weber* v. *State of New York* (53 N. Y. S. 2d 598) is distinguishable since it dealt with a student at a State school rather than an inmate of an institution.

Hence, the doctrine of *Koenig* v. *Patrick Constr. Corp.* (298 N. Y. 313, *supra*) is not available to the claimant. His claim must necessarily be based on negligence, rather than violation of statutory duty. In appraising the State's negligence, however, the standards which it has created for others by its statutes and rules may very properly be applied. (*Beale* v. *State of New York,* 46 N. Y. S. 2d 824, *supra*; *Lee* v. *State of New York,* 187 Misc. 268, *supra.*) Applying them here, we find that for the reasons before stated, the State was negligent. Further, we find that it has failed to prove any contributory negligence on the part of the claimant. He was inexperienced and uninstructed, and definitely not a free agent. To base a finding of contributory negligence on a casual declination of goggles proffered without comment, instruction or warning, would be extreme, particularly in view of the unsatisfactory evidence that the offer ever occurred.

To round out the matter, one other point should be made. The *Koenig* case concerned the violation of a duty prescribed by statute. It does not appear to alter the rule of *Schumer* v. *Caplin,* (241 N. Y. 346) and *Teller* v. *Prospect Heights Hospital,* (280 N. Y. 456) that violation of a duty imposed by a rule is in a different category, and is merely evidence of negligence. For this reason also, the defense of contributory negligence, had it been established, would have been available.

It is undisputed that the injury resulted in considerable pain and discomfort, virtually total loss of vision of the right eye, and its eventual removal in January of 1948, and there is no doubt that these consequences flowed from the original accident. Claimant asserts that the vision of his left eye was also affected, but nothing in the medical testimony connects any such condition with the accident.

Claimant's age at the time of the accident was 28 years and his life expectancy was 36.73 years. He entered State prison on November 8, 1937, for a five to ten-year term. As an item of damage he claims diminished earning power based on his inability to secure employment at his regular occupation because of the loss of his eye. It does appear that between December, 1940, when he was paroled, and December, 1943, when he violated parole, he was employed by a trucking concern, first as a helper and later as a driver, with average earnings of about $60 per

week. The employment was none too steady, however; it was punctuated with two or three sojourns, totalling about six months, in Hudson County, New Jersey, penal institutions. After his discharge from State prison in June, 1947, he apparently had some difficulty in securing employment, because of his sight handicap. He also had other difficulties in the form of at least three encounters with the authorities, the last of which led to a ten months' term beginning in November, 1947. It is a fair question, therefore, whether he can be said to have had any regular or steady occupation. His record contains little promise that but for his unfortunate injury he would have spent the remainder of his working years steadily engaged as a truck driver. The diminution of earning power becomes under such circumstances a difficult speculation.

Upon the whole, it is our conclusion that the claimant is fairly entitled to an award of $10,000 for his pain, suffering, loss of his eye, and such diminution of earning power as may have occurred.

Findings in accordance with the above opinion may be submitted within fifteen days from the date hereof, otherwise this opinion will be considered the decision herein.

Let judgment be entered accordingly.