CADEAU *v.* BOYS' VOCATIONAL SCHOOL.

1. INFANTS—EMPLOYMENT—LAUNDRY—WORK PERMIT.
    Statutes relative to employment of minors prohibit the employment of a 14-year-old boy in a laundry in the absence of a work permit called for therein (CL 1948, §§ 408.60, 408.61, 409.3, 409.12).

2. SAME—EMPLOYMENT—BOY COMMITTED TO BOYS' VOCATIONAL SCHOOL.
    The work permit provisions of the statutes relative to employment of minors requiring a permit or certificate from the "superintendent of schools of the school district in which such child resides, or the county commissioner of schools" were not designed to apply to the situation of a boy committed to the boys' vocational school (CL 1948, §§ 408.60, 408.61, 409.3, 409.12; CLS 1956, § 803.105).

3. SAME—EMPLOYMENT—SCHOLARS—CONSTRUCTION OF STATUTES.
    The term "employment," as used in acts pertaining to employment of minors, was not intended to apply to the vocational training of a boy committed to the boys' vocational school as the term "employed" used therein does not cover scholars, pupils, and learners (PA 1909, No 285; PA 1947, No 157; CLS 1956, § 803.105).

4. SCHOOLS AND SCHOOL DISTRICTS—PUPILS—MASTER AND SERVANT.
    A person receiving instruction in a public school, whether the person be a minor or an adult, is not an employee and the place where he receives instruction is not a place of employment.

5. INFANTS—CHILD LABOR LAW.
    The Supreme Court is vigilant in the enforcement of child labor laws so as to give effect to their stated purpose (CL 1948, § 408.51 *et seq.*; § 409.1 *et seq.*).

---

REFERENCES FOR POINTS IN HEADNOTES
[1–4, 8] 31 Am Jur, Labor § 772.
[6] 50 Am Jur, Statutes § 229.
[7] 47 Am Jur, Schools § 56; 52 Am Jur, Torts § 100.

6. STATUTES—COURTS—INTENT.

It is not within the judicial function to extend the influence of statutes beyond their wording and intent.

7. STATES—ACTION FOR INJURY BY INMATE OF BOYS' VOCATIONAL SCHOOL.

A 14-year-old boy who received severe injuries to his left arm while engaged in laundry activity pursuant to his assignment thereto as a part of the vocational education and training program for which he was sent to the boys' vocational school has no statutory authority to sue the State for such injury.

8. INFANTS—EMPLOYMENT—BOYS' VOCATIONAL SCHOOL.

The term "employment," as used in statutes pertaining to employment of minors, does not include vocational training at the boys' vocational school (PA 1909, No 285; PA 1947, No 157; CLS 1956, § 803.105).

9. COSTS—PUBLIC QUESTION—INJURIES TO INMATE OF BOYS' VOCATIONAL SCHOOL.

No costs are allowed in action against the State in the court of claims for injuries sustained by a 14-year-old boy while an inmate at the boys' vocational school and assigned to activity in the laundry as a part of the vocational training there, a public question being involved (CL 1948, §§ 408.60, 408.61, 409.3, 409.12; CLS 1956, § 803.105).

Appeal from Court of Claims; Smith (Richard G.), J., presiding. Submitted April 13, 1960. (Docket No. 54, Calendar No. 48,015.) Decided June 6, 1960.

Clarence Cadeau, by his next friend, Hubert Cadeau, presented his claim against the Boys' Vocational School, Department of Social Welfare, and State of Michigan, for injuries received while working in school laundry. Claim dismissed. Plaintiff appeals. Affirmed.

*Schwartz & O'Hare (Sander M. Levin,* of counsel), for plaintiff.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, and *Russell A. Searl,* Assistant Attorney General, for defendants.

EDWARDS, J. Clarence Cadeau was committed to the boys' vocational school by the Wayne county probate court in April, 1954. On July 7, 1954, while he was operating a water-extracting machine in the laundry at boys' vocational school, he received severe and disabling injuries to his left arm. At that time Clarence was 14 years old.

A petition was filed by the boy's father, as next friend, against boys' vocational school, the department of social welfare, and the State of Michigan, alleging violation of the Michigan statutes governing child labor; alleging negligence in the maintenance of the laundry machinery, and in the training and assignment of Clarence to the particular machine on which he was hurt; and alleging that the laundry was a proprietary function of the boys' vocational school.

The petition was heard in full before the court of claims. The circuit judge, sitting in that court, entered an opinion containing complete findings of fact. He did not find negligence as to the defendants in relation to operation of the laundry. He did find that Clarence's own negligence was a proximate cause of his injury, and that his claim was barred thereby. He also found facts which indicated that the laundry operation was a nonproprietary governmental function and, relying upon the majority holding in *Richards* v. *Birmingham School District*, 348 Mich 490, he held the suit barred by the doctrine of governmental immunity. He also held that the statutes governing child labor were not applicable to inmates of the boys' vocational school. Only the last of these issues is preserved for our review by this appeal.

The court of claim's opinion bearing on this issue was as follows:

"The petitioner urges that this ward falls under the protection of PA 1909, No 285, as amended (CL 1948, § 408.51 *et seq.,* as amended [Stat Ann 1950 Rev § 17.11 *et seq.*]), as well as the Hittle act, being CL 1948, § 409.1 *et seq.* (Stat Ann 1950 Rev § 17.701 *et seq.*). These acts seek to regulate the employment of men, women, and children. The work done by boys confined to the vocational school is for the purpose of training and for the additional purpose of keeping the institution running on a day-to-day basis. It would be just as logical to say that every 14-year-old student attending manual training classes in the schools of Michigan were subject to acts regulating employment. In the opinion of the court, the legislature did not intend that a boy committed to the boys' vocational school would be subject to these acts (CL 1948, § 409.14 [Stat Ann 1950 Rev § 17-.714])."

Appellant claims that the statutes cited do apply to boys' vocational school inmates, that they act to exempt the current claim from the doctrine of governmental immunity, and that violation of these statutes as to a minor is negligence which serves to remove the defense of contributory negligence.

The decisive question on this appeal is, therefore, whether or not the 2 statutes governing child labor in Michigan (PA 1909, No 285, as amended [CL 1948, § 408.51 *et seq.,* as amended (Stat Ann 1950 Rev § 17.11 *et seq.*)], and PA 1947, No 157 [CL 1948, § 409.1 *et seq.* (Stat Ann 1950 Rev § 17.701 *et seq.*)]) apply to inmates of the boys' vocational school.

The sections of PA 1909, No 285, primarily relied upon by appellant are:

"Sec. 10. No child under 15 years of age shall be employed, permitted or suffered to work in or in connection with any mercantile institution, store, office, hotel, laundry, manufacturing establishment

\* \* \* factory or workshop, quarry, telegraph or messenger service within this State during school hours \* \* \*

"(a) It shall be the duty of every mercantile institution, store, hotel, office, laundry, manufacturing establishment \* \* \* or any person coming within the provisions of this act to keep a register in which will be recorded the name, birthplace, age and place of residence of every person employed under the age of 18 years and it shall be unlawful for any such establishment or person to hire or employ or permit to be hired or employed or suffer to work, any child under the age of 18 years without [unless] there is first provided and placed on file in the business office thereof a permit or certificate. Such permit or certificate shall be issued by the superintendent of schools of the school district in which such child resides, or the county commissioner of schools, or some one duly authorized by him in writing, any of whom shall have power to administer oaths in relation thereto."[1]

"Sec. 11. No person under the age of 18 years shall be allowed to clean machinery while in motion nor employed in any hazardous employment, or where their health may be injured or morals depraved, nor shall females be unnecessarily required in any employment to remain standing constantly \* \* \* *Provided, however,* That any person over 16 and under 18 years of age may be employed in any occupation, other than the cleaning of machinery while in motion, subject to the following conditions: Such employment shall be for a total of not more than 54 hours in any week nor more than 10 hours in any 1 day."[2]

Those of PA 1947, No 157, are as follows:

"Sec. 3. No minor under 18 years of age shall be employed, permitted or suffered to work in, about,

---

[1] CL 1948, § 408.60 (Stat Ann 1950 Rev § 17.20).
[2] CL 1948, § 408.61 (Stat Ann 1950 Rev § 17.21).

or in connection with any gainful occupation, not excepted by this act, unless and until the person employing such minor shall procure from the minor and keep on file a work permit for each minor so employed, issued by the superintendent of schools."[3]

"Sec. 12. The commissioner of labor shall have authority to establish standards not inconsistent with the provisions of this act as to the working conditions of minors under 18 years of age in various types of employment and as to safety, health and morals."[4]

The language of these acts certainly prohibits the *employment* of a 14-year-old boy in a laundry absent the work permit called for therein.[5] The significance of the term "employment" as to these statutes is further emphasized by their titles:

"An act to provide for the creation of a department of labor; to prescribe its powers and duties; to regulate the *employment* of labor; to prescribe certain equipment and conditions of *employment*; and to prescribe penalties for the violation of this act." (Emphasis supplied.) PA 1909, No 285, as amended by PA 1945, No 220.

"An act to provide for the legal *employment* and protection of minors under 18 years of age; to define legal *employment*; to prohibit the *employment* of minors under 18 years of age without work permit, except as otherwise provided in this act; to provide for the issuance and revocation of work permits and age certificates, to provide for the regulation of hours and conditions of *employment* of minors; and to provide for the enforcement of this act and prescribe penalties for the violation of this act." (Emphasis supplied.) PA 1947, No 157.

---

[3] CL 1948, § 409.3 (Stat Ann 1950 Rev § 17.703).
[4] CL 1948, § 409.12 (Stat Ann 1950 Rev § 17.712).
[5] It is likewise clear from this record that under department of labor regulations no such permits are issued for employment of boys under 15 around moving machinery.

Commitments to boys' vocational school are governed by PA 1925, No 185, as amended (CL 1948 and CLS 1956, § 803.101 *et seq.,* as amended [Stat Ann 1954 Rev and Stat Ann 1959 Cum Supp § 28-.1961 *et seq.*]).

The purpose of those commitments is statutorily spelled out thus:

· "The State shall at all times stand in the place and relationship of parent and legal guardian to each boy sent to said boys' vocational school during his residence therein or while under the control thereof; and the superintendent shall represent the State in such relationships. Each boy sent to such school shall be subject to the training, education and discipline herein prescribed by the commission." CLS 1956, § 803.105 (Stat Ann 1954 Rev § 28.1965).

The use of the laundry as a part of the vocational training at boys' vocational school was recommended to the school by a governor's commission. The superintendent of the boys' vocational school testified:

"*A.* Well, the present program at the school is the direct result of a study, a survey, made under Governor Kelly in 1945. At that time the governor appointed a committee of close to a hundred people, representing all the different areas of interest in child welfare, and they thoroughly surveyed the school and made certain recommendations in the vocational areas, and specifically they recommended that the vocational work for younger boys should be exploratory in nature. For example, the boys whose ages ranged from 12 to 14 years might be expected to explore the various occupational fields represented in the institution.

"*Q.* Now, did the committee make recommendations as to in what fields vocational training should be furnished?

"*A.* They did.

"*Q.* And what fields did those include?

"*A.* Machine shop, painting and decorating, baking, cooking, ground maintenance, printing, drafting, farming, building maintenance, woodworking, sheet-metal work, horticulture, laundering, tailoring, shoe repair, barbering, and auto mechanics.

"*Q.* Can you tell me, do you have—or has the school set up training in each of those subjects that you just enumerated?

"*A.* With the exception of auto mechanics, they have."

The training program was described thus by the laundry supervisor:

"*A.* The program is that any boy starting in on the laundry detail starts in on the flat-work ironer, and works his way up to the other various assignments on a seniority basis. He goes from the flat-work ironers to the extractors, to the driers, and then to the washing machines, giving each boy an opportunity to work each individual job.

"*Q.* About how long, on the average, is each boy assigned to your laundry?

"*A.* We have boys that stay 30 days, we have boys that stay 6 months. The average boy who is interested in the laundry will be there for from 5 to 6 months.

"*Q.* Five to 6 months?

"*A.* That's right.

"*Q.* Well, the boys that complete the course, what evidence is given to them?

"*A.* The boy who completes a course is given a certificate of endeavor for the period of time he has worked in the laundry.

"*Q.* And that, do I understand, normally takes 5 to 6 months?

"*A.* We like to have them spend at least 4 months in order to be eligible for a certificate, yes, sir.

"*Q.* Now do you—the average boy that completes the course, is he qualified to go out and get a job in a commercial laundry?

"*A.* I would say yes, sir.

"*Q.* Do any of your boys go out and get jobs?

"*A.* We hear from several of the boys who have gone out and gotten a job in laundries and are doing well by themselves."

The testimony indicates that Clarence had been assigned to the laundry as a result of classification study:

"*Q.* Now can you tell me what factors enter into the consideration of the committee in making the assignment that you have indicated that was given to Clarence Cadeau on April 22, 1954?

"*A.* Well, in arriving at this assignment we took into account the fact that Clarence had an active dislike of academic subjects. We thought, too, that he should receive vocational training in an occupation, because the indications were that he would need to be self-supporting at an early age. We were aware of the fact that Clarence lacked the intellectual capacity and also the academic achievement for some of our skilled-training assignments."

It is apparent that Clarence's assignment to the laundry was a part of the vocational education and training program for which he was sent to the boys' vocational school.

The assignment to the laundry was made under the authority of the superintendent of the boys' vocational school. CLS 1956, § 803.105 (Stat Ann 1954 Rev § 28.1965). It is obvious that the work permit provisions of the statutes cited which refer to a permit or certificate from "the superintendent of schools of the school district in which such child resides, or the county commissioner of schools" were not designed to apply to the situation of a boy committed to boys' vocational school.

More directly, however, we believe that the word "employment" as used in PA 1909, No 285, and PA 1947, No 157, was not intended to apply to the vocational training of a boy committed to the boys' vocational school.

Somewhat similar problems have been dealt with by other courts. In a negligence action brought against a public technical institute wherein the injured party was a pupil, an English court said:

"A school or college is not a factory and the scholars or pupils are employed neither by those who own nor by those who teach in the school. Nothing, I think, would have caused parliament more surprise when discussing the merits and difficulties of the new factory legislation in 1937 than to be told that they were legislating for schools, colleges and technical institutes. There is much in the factories act, 1937, which is applicable to any place where work is done upon machines, but there are many other provisions in the act which are as clearly inapplicable to schools or institutes. If it were necessary I could, I think, support this view by referring to subsections 4 and 6 of section 152, the latter of which deals with apprentices. Again section 154 and possibly section 104 tend to show that parliament had not the intention of legislating for schools, but was not unwilling to provide some machinery whereby the operation of the factories act could be applied to certain institutions and premises which are not factories. I think that those sections support the view that parliament did not intend to cover by the words 'persons who are employed' scholars, pupils and learners." *Weston* v. *London County Council*, [1941] 1 KB 608, 613 (110 LJKB 332, 165 LT 135).

See 163 ALR 474.

In relation to a suit based upon still another vocational training school injury, the Wisconsin supreme court said:

"It is also clear from the provisions of the statute that unless the defendant was an employer the plaintiff was not an employee and the place where he was injured was not a place of employment.

"If the contention of the plaintiff is sound then every schoolroom is a place of employment and every pupil is a frequenter, and the city or State maintaining the school, although acting in a governmental capacity, is liable for injuries sustained while in the course of receiving instruction. There is nothing in the safe-place statute which indicates that the legislature intended any such result. A person receiving instruction in a public school, whether the person be a minor or an adult, is not an employee and the place where he receives instruction is not a place of employment." *Kirchoff* v. *City of Janesville*, 255 Wis 202, 206 (38 NW2d 698).

See, also, *In re Abbott's Estate,* 311 Mich 35.

We note, of course, the series of excellently reasoned cases from the State of New York, in which recovery by inmates of State institutions has been sustained. These are based, however, upon a New York statute (to which as yet there is no Michigan counterpart) which allowed suits for negligent injury to be brought against the State by inmates of its public institutions. *Robinson* v. *State,* 242 App Div 94 (273 NYS 465), reversing 150 Misc 593; *Gould* v. *State,* 196 Misc 488 (92 NYS2d 251); *Oliver* v. *State of New York,* 17 Misc 2d 1018 (186 NYS2d 151).

This Court has been vigilant in enforcement of the child labor laws so as to give effect to their stated purpose. *Fritz* v. *Christian Reformed City Mission Board,* 281 Mich 582; *Field* v. *Jack & Jill Ranch,* 343 Mich 273. And we conceive of many reasons why a right of action for negligent injury, or coverage under the workmen's compensation act, should be provided for inmates of State institutions. See 1 Larson's Workmen's Compensation Law,

§ 47.31. But we cannot, within our judicial function, extend the influence of statutes beyond their wording and intent.

We cannot find in these laws any language giving authorization of suit by this claimant. Nor do we believe that any reasonable interpretation of legislative intent as applied to the term "employment" in the 2 statutes upon which the present claim is based can be held to include vocational training at the boys' vocational school.

Affirmed. No costs, a public question being involved.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, and KAVANAGH, JJ., concurred.

SOURIS, J., did not sit.