CARTER v DETROIT HARBOR TERMINALS, INC

Docket No. 65555. Decided December 7, 1982. On application by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave to appeal, reversed the judgments of the Court of Appeals and the Workers' Compensation Appeal Board and remanded the case to the board for further proceedings.

Lila Carter, widow of Emmett Carter, filed a petition for workers' compensation benefits following the death of her husband as a result of injuries suffered at his place of employment. His employer, Detroit Harbor Terminals, Inc., a self-insurer, denied liability. Following a hearing, the Bureau of Workers' Disability Compensation awarded benefits. The employer appealed to the Workers' Compensation Appeal Board. The plaintiff, suspecting the employer's imminent insolvency, gave notice of her claim to the Self-Insurers' Security Fund. Because the plaintiff did not receive the statutory 70% payment of benefits from the employer or the SISF, the WCAB granted the plaintiff's motion to dismiss the appeal. After the award of benefits was reduced to judgment in the Wayne Circuit Court, a temporary receiver was appointed for the employer, and the SISF commenced payments from the date of the appointment. The statute defines an "insolvent" employer, among others, as an employer for whom a receiver is appointed in a court of this state. The plaintiff then petitioned the bureau for a determination of rights regarding the obligation of the SISF to pay benefits from the date of death or the date of her initial petition for a hearing. A hearing referee found that the SISF's obligation extended back to the date of death. The WCAB reversed, holding that the SISF need not pay benefits for the period before the appointment of the receiver for the employer. The Court of Appeals, Danhof, C.J., and Beasley and V. J. Brennan, JJ., denied leave to appeal (Docket No. 48647). The plaintiff appeals.

In an opinion by Justice Ryan, joined by Justices Kavanagh, Levin, and Coleman, the Supreme Court *held:*

Under the workers' compensation act, a claimant does not

REFERENCE FOR POINTS IN HEADNOTES
[1-3] 82 Am Jur 2d, Workmen's Compensation §§ 407 *et seq.,* 650, 652.

qualify for payment from the Self-Insurers' Security Fund until the self-insured employer is insolvent as defined in the act. The fund is not required to pay workers' compensation benefits to a claimant for the period before the date on which the employer becomes insolvent.

1. The Worker's Disability Compensation Act provides that a claimant who is receiving or who is entitled to receive workers' compensation benefits from a private self-insured employer may request that the Self-Insurers' Security Fund make such payments where the employer is unable to make or continue the payments because of insolvency. The act defines an insolvent employer as one who files for relief in bankruptcy, against whom bankruptcy proceedings are filed, or for whom a receiver is appointed by a state court. Prior to the occurrence of the act which renders the employer insolvent under the act, the claimant does not qualify for payment by the fund.

2. The classification of insolvency of private self-insured employers which determines when claimants are eligible to receive payments by the fund is reasonable. It rationally promotes the goals of preserving the fiscal integrity of the fund and providing a clear guideline for determining eligibility. Although it may not afford a claimant adequate relief or may render relief more difficult to obtain, the statute is sufficiently related to legitimate legislative purposes to pass constitutional muster.

Affirmed.

Chief Justice Fitzgerald and Justice Williams dissented. They would hold that the Self-Insurers' Security Fund must pay workers' compensation benefits from the date on which a claimant who is entitled to benefits files a request for benefits with the fund's administrator or the date on which the claimant files a petition for a hearing before the Bureau of Workers' Disability Compensation, including a period before the employer's insolvency during which no benefits were paid, if the request or petition precedes the actions creating the insolvency.

1. The Worker's Disability Compensation Act authorizes the SISF to pay benefits to a person entitled to receive benefits from a private self-insured employer who becomes insolvent and is unable to continue payments. The act does not permit payments for any period of disability before the date of either a request for payments through the SISF administrator or a petition for a hearing before the Bureau of Workers' Disability Compensation. However, the act does not clearly preclude the SISF from making payments not made by the employer for the period before insolvency. Because of the purposes of the act, the

SISF is required to make payments under the terms of the act from the date of a request or the date of a petition, including the period before insolvency where the request or petition precedes insolvency. Delays in instituting insolvency proceedings should not deprive a claimant of benefits; any gap in benefits should be borne by the fund and not the disabled worker, because that is the fundamental purpose of the security fund.

2. The plaintiff gave notice to the SISF of her claim of benefits more than six months prior to the defendant's statutory insolvency. Additionally, before the plaintiff's notice, the bureau posted a memorandum which mistakenly informed attorneys that the employer was in bankruptcy and that self-insurance liabilities could be secured by the SISF.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — SELF-INSURERS' SECURITY FUND — LIABILITY.

The Self-Insurers' Security Fund is not required to pay workers' compensation benefits to a claimant for the period before a private self-insured employer becomes insolvent as defined in the workers' compensation act (MCL 418.502, 418.537[1]; MSA 17.237[502], 17.237[537][1]).

2. WORKERS' COMPENSATION — SELF-INSURERS' SECURITY FUND — INSOLVENCY — LIABILITY.

Under the workers' compensation act, a private self-insured employer becomes insolvent where the employer files for relief in bankruptcy, proceedings in bankruptcy are filed against the employer, or a receiver is appointed for the employer in a state court; the classification rationally promotes the legitimate legislative purposes of preserving the fiscal integrity of the Self-Insurers' Security Fund by assuring that the fund pays workers' compensation benefits only where the inability of the employer to make the payments is certain, and providing a clear guideline for determining a claimant's eligibility for benefits, and comports with equal protection guarantees under the federal and state constitutions (MCL 418.502, 418.537[1]; MSA 17.237[502], 17.237[537][1]).

DISSENTING OPINION BY FITZGERALD, C.J., AND WILLIAMS, J.

3. WORKERS' COMPENSATION — SELF-INSURERS' SECURITY FUND — LIABILITY.

*The Self-Insurers' Security Fund must pay workers' compensation*

*benefits where a private self-insured employer is unable to
make payments because of insolvency from the date on which a
claimant who is entitled to benefits files a request for benefits
with the fund's administrator or the date on which the claim-
ant files a petition for a hearing before the Bureau of Workers'
Compensation, including a period before the employer's insol-
vency during which no benefits were paid if the request or
petition precedes the actions creating the insolvency (MCL
418.537; MSA 17.237[537]).*

*Thurswell & Chayet, P.C.* (by *Harvey Chayet*),
for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *Eileen D. Zielesch,*
Assistant Attorney General, for defendant Self-In-
surers' Security Fund.

RYAN, J. This workers' compensation case pre-
sents the issue of when the obligation of the Self-
Insurers' Security Fund (SISF) to pay benefits
under MCL 418.537; MSA 17.237(537) begins. In
this case, we find the obligation to have begun on
July 29, 1977, the date upon which a receiver was
appointed for the defendant corporation.

Plaintiff's decedent died on November 21, 1971,
as a result of a work-related injury. In 1973,
plaintiff petitioned for death benefits which were
awarded in 1975. That award was appealed, but
because Detroit Harbor Terminals was unable to
pay 70% of the benefits while appeal was pending,
as required by statute, the plaintiff moved for
dismissal. The Workers' Compensation Appeal
Board granted plaintiff's motion on July 15, 1977,
and the final order was reduced to judgment in the
Wayne Circuit Court.

On July 29, 1977, a receiver was appointed for
defendant Detroit Harbor Terminals. For all peri-
ods subsequent to that date, defendant SISF has

made the weekly payments as ordered in the original decision.

On October 25, 1977, the plaintiff petitioned for a determination of rights. She asked that the SISF be required to make benefit payments for the period beginning on the date of her husband's death, or on the date of the initial filing of the petition for benefits, September 20, 1973. In a decision mailed February 12, 1979, the hearing referee agreed that the SISF was obligated to make benefit payments for the period beginning on the date of the decedent's death.

The WCAB reversed this decision, holding that the SISF was not responsible for any payments prior to the date that receivership was established for defendant Detroit Harbor Terminals. The Court of Appeals denied leave to appeal on July 14, 1980, and plaintiff seeks relief from this Court.

Section 537(1) of the Worker's Disability Compensation Act defines the class of employees covered by the SISF. *McQueen v Great Markwestern Packing Co,* 402 Mich 321, 327; 262 NW2d 820 (1978). Qualification is based upon employer insolvency:

"The trustees may authorize payments from the self-insurers' security fund upon request to the fund's administrator by a disabled employee * * * who is receiving or is entitled to receive worker's compensation benefits from a private self-insured employer *who becomes insolvent* after November 16, 1971, *and* is *unable to continue the payments."* MCL 418.537(1); MSA 17.237(537)(1). (Emphasis added.)[1]

[1] Subsections (2) and (3) detail the manner in which qualified employees may file their claims against the SISF. *McQueen, supra,* pp 327-328; *Lee v Benton Harbor Malleable Industries,* 92 Mich App 590; 285 NW2d 298 (1979). These sections require that the employee make a request through the fund's administrator or file a petition for a hearing with the bureau. They also provide that no payments may be made for any period prior to the request. MCL 418.537, subds (2), (3);

In order to understand what is meant by the term "insolvent" in § 537, this section must be read in conjunction with MCL 418.502; MSA 17.237(502), which defines an "insolvent private self-insured employer".[2]

*"For the purposes of this act,* an insolvent private self-insured employer means either an employer who files for relief under the bankruptcy act, or an employer against whom bankruptcy proceedings are filed, or *an employer for whom a receiver is appointed* in a court of this state." MCL 418.502; MSA 17.237(502). (Emphasis added.)

In this case, the employer, Detroit Harbor Terminals, was placed in receivership on July 29, 1977. Because that was the day on which the employer became insolvent under the statute, the SISF was not required to pay benefits to the

MSA 17.237(537), subds (2), (3). Petitioner first notified the SISF that she might be entitled to benefits from them on November 19, 1976. There may be some question whether petitioner is entitled to any benefits prior to that date. See *Lee v Benton Harbor Malleable Industries, supra.* However, because defendant-appellee failed to raise the issue, we do not address this question here.

[2] This approach is consistent with past construction of the statute in question by the Court of Appeals. In *Cesnulis v Monarch Products Co,* 87 Mich App 290, 292; 274 NW2d 42 (1978), the Court defined "self-insurer" in MCL 418.537(1); MSA 17.237(537)(1), by referring to another section of the same statute, MCL 418.601; MSA 17.237(601), which provided in part that *"[w]henever used in this act:* * * * (b) 'self-insurer' means an employer authorized to carry its own risk". (Emphasis added.) As this Court unanimously stated in *Joslin v Campbell, Wyant & Cannon Foundry Co,* 359 Mich 420, 426; 102 NW2d 584 (1960):

"[T]his Court must construe a legislative enactment in its entirety. As this Court has previously stated, one provision may not be construed in such manner as to render another of no effect if such result can be avoided. *Brady v City of Detroit,* 353 Mich 243, 248 [91 NW2d 257 (1958)]. Earlier, this Court said:

" 'The entire act must be read, and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole.' *City of Grand Rapids v Crocker,* 219 Mich 178, 182, 183 [189 NW 221 (1922)]."

plaintiff for any disability prior to that day. The plaintiff failed to qualify under the statute's classification scheme until there was an insolvency as defined by the statute.

Adherence to the statutory definition of insolvency assures that SISF funds are used to pay benefits only when it is determined with certainty that the employer is unable to continue the payments. It sets forth a clear guideline so that the hearing referee and the WCAB can easily ascertain the exact date of insolvency and thereby determine the party's eligibility for SISF benefits. It avoids creating an incentive for any financially troubled self-insured employer to improve its cash flow by refusing to pay compensation benefits and advising injured employees to seek recourse from the SISF. Most importantly, this approach conforms to the clearly expressed legislative intent that the SISF may not pay benefits until the private self-insured employer "has become insolvent". MCL 418.537(2); MSA 17.237(537)(2).

The plaintiff contends that the statute, as interpreted and applied by the WCAB, denies her equal protection under both the state and federal constitutions. When the Legislature set up the SISF, it necessarily engaged in a balancing process. The goals to be achieved by the creation of this fund were carefully considered and weighed against the cost of achieving those goals. The line separating those eligible for SISF benefits from those ineligible had to be drawn somewhere. Unless the resultant classification is arbitrary, unreasonable, or lacks a rational basis, this Court must give deference to the legislative decision. *Miller v Detroit Savings Bank,* 289 Mich 494, 497; 286 NW 803 (1939).

The classification here is a reasonable one. As

noted above, the statute rationally promotes the goals of preserving the fiscal integrity of the SISF and providing a clear guideline for determining eligibility. We believe that the challenged statute is sufficiently related to these legitimate legislative purposes to pass constitutional muster. See *Borden's Farm Products Co, Inc v Baldwin*, 293 US 194; 55 S Ct 187; 79 L Ed 281 (1934); *People v Poucher*, 398 Mich 316; 247 NW2d 798 (1976).

The statute, as it is written, may not afford the plaintiff what some would regard as adequate relief, or may render that relief more difficult to obtain. In some cases, those claimants entitled to benefits may be forced to file bankruptcy proceedings against the employer and, just as any other general creditor, may be forced to settle with the receiver for a part of the amount owed. While we may be sympathetic to the plaintiff's predicament, we are reminded that " '[i]t is not within the province of this Court to read [into a statute] a mandate that the legislature has not seen fit to incorporate. Our duty is to apply the law as we find it.' " *Joslin v Campbell, Wyant & Cannon Foundry Co*, 359 Mich 420, 429; 102 NW2d 584 (1960), quoting *Jones v Grand Ledge Public Schools*, 349 Mich 1, 11; 84 NW2d 327 (1957); *Cadeau v Boys' Vocational School*, 359 Mich 598, 609; 103 NW2d 443 (1960).

The Court should not, by "heavy-handed judicial construction", do violence to the well-settled meaning of "insolvency" as defined by the Legislature. See *Ecorse Screw Machine Products Co v Corporation & Securities Comm*, 378 Mich 415, 417-418; 145 NW2d 46 (1966).

Accordingly, in lieu of granting leave to appeal, we affirm the judgments of the WCAB and the Court of Appeals. GCR 1963, 853.2(4).

Kavanagh, Levin, and Coleman, JJ., concurred with Ryan, J.

Fitzgerald, C.J., and Williams, J. This workers' compensation case presents the issue of when the obligation of the Self-Insurers' Security Fund (SISF) to pay benefits under MCL 418.537; MSA 17.237(537) begins. In this case, we find the obligation to have begun on September 20, 1973, the date upon which the plaintiff petitioned for benefits.

I

Plaintiff's decedent died on November 21, 1971; the petition for benefits was filed by plaintiff on September 20, 1973. A judgment in favor of the plaintiff became final in 1977. On July 29, 1977, a receiver was appointed for the employer of plaintiff's decedent. From that date forward, the SISF has made weekly payments.

On October 25, 1977, the plaintiff petitioned for a determination of rights. She asked that the SISF be required "to pay benefits from date of death and/or date of the initial filing of the petition for hearing". The hearing referee agreed in 1979 that the SISF's obligation to the plaintiff extended back to the date of death. The Workers' Compensation Appeal Board reversed the referee's decision, though, holding that the SISF need not pay benefits for the period prior to the establishment of the receivership. The Court of Appeals denied leave to appeal.

II

The WCAB held, and the SISF contends, that

the insolvency requirement of the Worker's Disability Compensation Act is essentially jurisdictional—no payments may be ordered for benefits that may thereafter be found due for the period prior to insolvency as defined in the act.

"[A]n insolvent private self-insured employer means either an employer who files for relief under the bankruptcy act or an employer against whom bankruptcy proceedings are filed or an employer for whom a receiver is appointed in a court of this state." MCL 418.502; MSA 17.237(502).

Section 537(1) of the Worker's Disability Compensation Act[1] authorizes SISF payments to one entitled to receive "benefits from a private self-insured employer who becomes insolvent after November 16, 1971, and is unable to continue the payments". MCL 418.537(1); MSA 17.237(537)(1).

Section 537(2) of the act sets forth the method for requesting payment from the SISF:

"If an employee becomes disabled or dies because of a compensable injury or disease while in the employ of a private self-insured employer who has become insolvent and who is unable to make compensation payments, the employee or a dependent of the employee as defined in section 331 may seek payment from the self-insurers' security fund either by request through the fund's administrator or by filing a petition for hearing with the bureau."

Section 537(3) does not permit payments "for any period of disability that is before the date of the request to the administrator or the date of the petition for hearing before the bureau".

The statute does not clearly disallow payments covering a period prior to insolvency, as long as a

---

[1] MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

petition is filed or a request is made. In light of the purposes of the act, payments will therefore be required under the terms of the statute from "the date of the request to the administrator or the date of the petition for hearing" if the request or petition precedes the actions creating "insolvency".[2]

In the instant case the SISF had notice of the claim for SISF benefits more than six months prior to statutory insolvency. In addition, the Bureau of Workers' Disability Compensation had earlier posted a memorandum on October 25, 1976, which mistakenly informed attorneys that the "employer is in bankruptcy and their self-insurance liabilities may be secured by the Self Insured Insolvency Fund *[sic]*".

Delays in instituting insolvency proceedings, particularly given the instant facts, should not deprive a claimant of benefits. The act is designed to protect employees from the financial consequences when self-insured employers are unable to make required payments.

In a different context, this Court has recognized the problems for claimants who are relegated to insolvency proceedings in order to collect benefits. In *McQueen v Great Markwestern Packing Co,* 402 Mich 321, 340; 262 NW2d 820 (1978), we stated:

"The WCAB shall request the Workers' Compensation Commission to designate a person to act as guardian for all of defendant employer's injured employees with workers' compensation claims affected by its insolvency. This guardian shall supervise the fund set up * * * and shall pursue all such workers' claims in the bankruptcy court. There is no specific provision in the

[2] The SISF's obligation to pay shall not, however, be construed to cause a double recovery. Where the self-insured employer has made a portion of the payments for which it is liable, the SISF shall receive a setoff in that amount.

worker's compensation act or 1971 PA 149 [SISF act], but equity and the remedial intention of the Legislature certainly warrants this action. I would mandate it inasmuch as the individual injured workers can hardly be required to make themselves whole when the circumstances are the result of the commission's failure to exercise perfect judgment in the grant of the self-insurance privilege."

Furthermore, any gap in benefits should be borne by the fund and not by the disabled worker. That is the fundamental purpose of the security fund provisions of the act.[3]

Accordingly, in lieu of granting leave to appeal, we would reverse the judgments of the Court of Appeals and the Workers' Compensation Appeal Board. GCR 1963, 853.2(4). The case should be remanded to the Workers' Compensation Appeal Board for further proceedings not inconsistent with this opinion.

The late Justice BLAIR MOODY, JR., took no part in the decision of this case.

---

[3] If required payment did not commence until "insolvency", such a scheme might well work to the detriment of employers who wish to avoid bankruptcy or receivership petitions. If we were to approve a statutory construction that identified § 502 "insolvency" as the earliest date to secure benefits from the security fund, it would give lawyers for workers' compensation claimants a motive to immediately file bankruptcy petitions upon any failure to make required payments.