TODD v TEXTRON, INC

COLLINS v TEXTRON, INC

Docket Nos. 70047, 70635. Submitted January 10, 1984, at Lansing.—
Decided February 4, 1985. Leave to appeal applied for.

Clinton A. Todd filed a workers' disability compensation claim on
April 6, 1981, against Textron, Inc., and Textron's insurer,
Aetna Casualty & Surety Company, alleging disablement
caused by an occupational disease resulting from exposure to
dust at Textron's Campbell, Wyant & Cannon Foundry and
alleging his date of injury to be his last day of work, November
30, 1979. William Collins, Sr., filed a similar claim on October
20, 1980, alleging his date of injury to be his last day of work,
April 14, 1980. As to each claim, Textron sought statutory
reimbursement from the claimant's prior employer, Lakey
Foundry, and, because Lakey Foundry was bankrupt, from the
Self-Insurers' Security Fund (SISF). Textron and the SISF
entered into voluntary pay agreements with the claimants. A
dispute arose, however, as to whether the SISF's obligations for
reimbursement ran from the dates Textron's obligations to the
claimants arose, that is from the last day of each claimant's
employment, or from the dates upon which the SISF was
notified of the claims. The hearing referee as to each of the
claims determined that the SISF's obligation to make reim-
bursement ran from the date Textron's obligation to pay bene-
fits arose rather than the date Textron served notice upon the
SISF. In the appeal of each claim, the Workers' Compensation
Appeal Board reversed the referee's determination relative to
the date on which the SISF's obligation arose and held that,
since Textron stood in the shoes of the claimant with respect to
claims on the fund, the notice of claim language in the statute

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 73 Am Jur 2d, Statutes § 194.

[2] 18 Am Jur 2d, Contribution § 48.

82 Am Jur 2d, Workmen's Compensation §§ 408, 409, 426 *et seq.*,
650, 652.

Liability of successive employers for disease or condition allegedly
attributable to successive employments. 34 ALR4th 958.

[3] 73 Am Jur 2d, Statutes §§ 249, 250, 254.

authorizing payments by the SISF was applicable to a reimbursement claim by an employer and, accordingly, the SISF's obligation ran only from the dates of Textron's notices of its claims for reimbursement. Textron appealed by leave granted in each of the cases. The appeals were consolidated for consideration. *Held:*

1. At the time these claims arose the Worker's Disability Compensation Act provided that, as to a claim for benefits arising out of disablement by reason of an occupational disease, the employer of the claimant on the last day of the claimant's employment was liable for payment of the benefits but that the last employer could seek proportional reimbursement from any prior employer where such prior employment exposed the claimant to conditions which caused the occupational disease. The act further provided that where the prior employer was an insolvent private self-insured employer the SISF would be treated as the prior employer and that, when there was a claim for such apportionment, the trustees of the SISF might reimburse the subsequent employer.

2. The clear and unambiguous intent of these provisions was that the SISF stands in the shoes of the prior employer and is liable for reimbursement in the same manner as a prior employer. The notice of claim limitation relative to claims brought directly by claimants against the SISF is not relevant to an apportionment claim brought by an employer against the SISF. The appeal board erred as a matter of law in limiting the SISF's obligation to those benefits paid after Textron had served notice of its claims upon the SISF.

Reversed and remanded.

1. STATUTES — UNAMBIGUOUS STATUTE — JUDICIAL CONSTRUCTION.

A statute which is clear and unambiguous on its face such that there is no room for judicial construction or interpretation must be enforced as written.

2. WORKERS' COMPENSATION — OCCUPATIONAL DISEASES — APPORTIONMENT OF LIABILITY FOR BENEFITS — SELF INSURERS' SECURITY FUND.

The apportionment provision in the Worker's Disability Compensation Act prior to its 1980 amendment which provided that the last employer of a claimant seeking benefits as a result of a work-related occupational disease could seek from any prior employer of the claimant which contributed to the causing of the occupational disease a proportional contribution to the cost of benefits paid because of the occupational disease and which provided that, if a prior employer was an insolvent self-insured

employer, the Self Insurers' Security Fund shall be treated as the prior employer, when coupled with the provision that provided that the trustees of the Self Insurers' Security Fund were authorized to disburse funds to any employer which was entitled to a proportional contribution by reason of the fund's being treated as a prior employer, unambiguously mandated that the fund was liable to the last employer for a proportional contribution of all benefits paid by the last employer rather than only those benefits paid after notice of the claim had been made on the fund (MCL 418.435, 418.537[4]; MSA 17.237[435], 17.237 [537][4]).

3. Statutes — Judicial Construction.

   An act must be read in its entirety and the meaning given to one section arrived at after due consideration of other sections so as to produce, if possible, a harmonious and consistent enactment as a whole.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Caleb B. Martin, Jr.,* Assistant Attorney General, for the Self-Insurers' Security Fund.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells*), for Textron, Inc., and Aetna Casualty & Surety Company.

Before: Allen, P.J., and Hood and W. S. White,* JJ.

Hood, J. Textron appeals by leave granted from the decisions of the Workers' Compensation Appeal Board in these consolidated cases.

Clinton Todd's last day of work for Textron was November 30, 1979. He filed a workers' compensation claim against Textron on April 6, 1981, alleging that his last day of work was his disabling injury date. Textron joined Lakey Foundry, Todd's bankrupt former employer, and the Self-Insurers' Security Fund (SISF) as apportionment defendants on July 16, 1981.

* Circuit judge, sitting on the Court of Appeals by assignment.

Willaim Collins last worked for Textron on April 14, 1980, and filed a claim against Textron for workers' compensation benefits on October 20, 1980. Textron filed its motion to add Lakey, also Collins' predecessor employer, and the SISF on November 19, 1980.

Textron and the SISF entered into voluntary pay agreements with both claimants which provided each claimant with benefits running from his last day of work. The SISF does not dispute that Textron is entitled to payment by the SISF for a portion of the compensation Textron must pay to the claimants. MCL 418.435; MSA 17.237(435). The only dispute is a legal question: When does the Worker's Disability Compensation Act require the SISF to begin to pay its proportionate share?

Since Todd and Collins became disabled because of an occupational disease, Textron's responsibility to provide compensation to each claimant ran from each claimant's last day of work with Textron, the statutorily designated date of injury. MCL 418.301(1); MSA 17.237(301)(1), *Sosnowski v Dandy Hamburger,* 384 Mich 221; 180 NW2d 761 (1970). However, § 435 permitted Textron to seek a proportionate contribution for the cost of benefits from each claimant's prior employers which contributed to the occupational disease. That section stated, in part:

"The total compensation due shall be recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted. If the dispute or controversy arises as to the payment of compensation or as to liability therefor, the employee shall give notice to and make claim upon the last employer only and apply for a hearing against the last employer only. If the employee was employed by prior employers in an

employment to the nature of which the disease was due and in which it was contracted, the hearing referee to whom the case is assigned or the director on motion made in writing by the last employer shall join any or all prior employers, mentioned in the motion, as parties-defendant. A 'prior employer', for purposes of this section, means an employer who has employed the employee for 6 months or longer during the last 10 years preceding the date upon which the employee was last subjected to conditions resulting in disability. *If a 'prior employer' is an insolvent private self-insured employer as defined in section 502, the self-insurers' security fund shall be treated as the 'prior employer' for the purposes of this section".* MCL 418.435; MSA 17.237(435) before amendment by 1980 PA 357. (Emphasis added).

At each claimant's hearing, the SISF did not dispute that it was a "prior employer" within the meaning of § 435 or that it must pay a proportionate share of Textron's obligation to the claimants. Instead, the SISF argued that, pursuant to § 537 of the WDCA, its duty to pay Textron a proportionate share of the claims ran from the dates on which Textron requested apportionment from the SISF rather than from the dates on which Textron's liability for each claimant's compensation began, *i.e.,* each claimant's last day of work.

Section 537 provides:

"(1) The trustees may authorize payments from the self-insurers' security fund upon request to the fund's administrator by a disabled employee or a dependent of the disabled employee as defined in section 331 who is receiving or is entitled to receive worker's compensation benefits from a private self-insured employer who becomes insolvent after November 16, 1971, and is unable to continue the payments.

"(2) If an employee becomes disabled or dies because of a compensable injury or disease while in the employ of a private self-insured employer who has become

insolvent and who is unable to make compensation payments, the employee or a dependent of the employee as defined in section 331 may seek payment from the self-insurers' security fund either by request through the fund's administrator or by filing a petition for hearing with the bureau.

"(3) Payments shall not be made from the self-insurers' security fund to an employee or a dependent of the employee as defined in section 331 for any period of disability that is before the date of the request to the administrator or the date of the petition for hearing before the bureau.

"(4) If there is an apportionment as provided in section 435, the trustees may reimburse subsequent employers." MCL 418.537; MSA 17.237(537).

The hearing referee disagreed with the SISF's argument in Todd's case:

"It is found that the liability of the Self-Insurers' Security Fund for reimbursement as a 'prior employer' under Section 418.435 and 418.537(4) of the Act commences with the date of the obligation of the last employer commences; in this case 12/1/79. Apportionment of the liability shall be accomplished in accordance with the terms of a voluntary pay agreement executed by the parties on 12/30/81, said terms being incorporated herein by reference as if set forth in full.

"Under Section 418.435, the last employer's obligation to pay compensation to a disabled employee is unaffected by the actual contribution of the last employment to the development of the disability. The last employer must pay 100% of the compensation due. Since, in the development of an occupational disease, it may not be possible to measure each employment's contribution to the disease process, the Legislature had created an artificial degree of contribution; proportionate contribution based on term of service. Each prior employer must pay what the Legislature has determined to be its 'fair share'. The obligation of a prior employer under Section 418.435 is not owed to the employee; rather, the last employer. In amending the

Act to confer 'prior employer' status on the Fund (section 418.537[4]), seemingly the Legislature intended that the Fund should also contribute its 'fair share', that is should stand in the shoes of the insolvent employer for '435' apportionment purposes. 'Fair Share' under '435' is determined by term of service. This purpose would be thwarted if the Fund's liability is limited by the language of Subsection (3).

"Further, Section 418.537(3) provides that payments shall not be made to an *employee or dependent* for any period prior to request to the administrator or filing of the petition for hearing. This limits the obligation owed directly to employees or dependents. There is no lack of expressed intent; the intent to limit is clear. Seemingly, had the Legislature so intended, they would have provided similar limiting language in Subsection (4). The rights conferred under Subsection (4) belong to employers, not employees and have thus been treated differently.

"Therefore, the liability of the Self-Insurers' Security Fund is found to commence with that of the last employer for purposes of apportionment." (Emphasis in original.)

The WCAB reversed the hearing referee's decision on the SISF's appeal. The WCAB found that the § 537(3) notice of claim requirement applied to requests for apportionment made by employers against the SISF pursuant to § 435. Therefore, the SISF's obligation to pay Textron a proportionate share ran only from the dates Textron filed its motions to add the SISF as a defendant; July 15, 1981, for Todd, and November 19, 1980, for Collins.

The WCAB opinion in the Todd appeal, followed in Collins' appeal, states in part:

"Admittedly resolving this matter without benefit of statutory directive which completely covers the situation, we are convinced that such a holding would entitle an *employer* to payments from the Fund for periods which an *employee* would be precluded, had the em-

ployee sought them. This ultimately convinced us that notice/claim to the Fund (MCL 481.537[3]) by an employer must precede any liability on the part of the Fund, as it does to an employer *(Carter v Detroit Harbor Terminals Inc,* 414 Mich 498; 327 NW2d 257 [1982]).

"Appellee argues that Section 537(3) specifically refers only to employee application for benefits, but it has previously been held that the SISF (since its inception) has also been liable to make payments to last employers having direct obligations to disabled employees as an apportionment defendant, standing in the shoes of the bankrupt employer *(Gomez v Campbell, Wyant & Cannon Foundry,* 78 Mich App 145; 259 NW2d 400 [1977]). Appellee's best argument is that it should not be limited by the notice of claim provision because it is helpless to initiate its own recovery until a plaintiff files first against it. It candidly couches its arguments in terms of the equities of its helplessness—but equitable powers are beyond the authority of this administrative agency.

"Thus while the statute is silent on the date the Fund's liability to an employer commences, we believe clear legislative intent here *(King v Director of the Midland County Dep't of Social Service,* 73 Mich App 253; 251 NW2d 270 [1977]) to be that such liability commences upon the notice of claim date established as the starting point for employee entitlement from the Fund—a 'clear guideline for determining eligibility' *(Carter, supra).* Following plaintiff's Petition against CWC, the latter on July 15, 1981, filed its motion to join the Fund."

Textron argues in this appeal that the language of §§ 435 and 537 is clear and in need of no interpretation and, thus, the WCAB erred by its interpretation of those sections. We agree and reverse.

If a statute is clear and unambiguous on its face, there is no room for statutory construction or interpretation of that statute. *Detroit v Redford Twp,* 253 Mich 453, 455; 235 NW 217 (1931).

Courts must enforce unambiguous statutes as written. *Scholten v Rhoades,* 67 Mich App 736, 745; 242 NW2d 509 (1976). We find §§ 537(4) and 435, when read together, clear and unambiguous. Section 537(4) authorizes the trustees of the SISF to disburse funds from the SISF to any employer when that employer is entitled to apportionment pursuant to § 435. Section 435 mandates that the SISF *shall* be treated as a prior employer within the meaning of § 435 if the actual prior employer is an insolvent self-insured employer. Once a hearing referee determines that a prior employer is liable to pay compensation to the last employer, the hearing referee "shall apportion liability for compensation among the several employers in proportion to the time that the employee was employed in the service of each employer in the employment to the nature of which the disease was due and in which it was contracted and shall enter a separate order in favor of the last employer and against prior employers for their proportionate share of liability". MCL 418.435; MSA 17.237(435), prior to amendment by 1980 PA 357. By their clear terms, neither § 435 nor § 537(4) contain the notice of claim requirement found in § 537(3).

The SISF, however, argues that in order to render the WDCA internally consistent, *Hunt v Ann Arbor,* 77 Mich App 304; 258 NW2d 81 (1977), *lv den* 402 Mich 824 (1977), this Court must affirm the WCAB. While it is true that, when interpreting a statute, an act "must be read in its entirety and the meaning given to one section arrived at after due consideration of other sections so as to produce, if possible, a harmonious and consistent enactment as a whole", *King v Director of the Midland County Dep't of Social Services,* 73 Mich App 253, 258; 251 NW2d 270 (1977), we have

previously found no interpretation of these provisions necessary.

Moreover, even were we to apply the above rulings in order to interpret §§ 435 and 537, we would not reach the same result as the WCAB. We find that the statute as written, without a notice of claim provision in § 537(4) or in § 435, does not produce an internally inconsistent or absured result. *King, supra.* Section 537(3) instructs the trustees of the SISF that they are not authorized to disburse compensation to an *employee* seeking benefits *from the SISF* for any period of disability prior to the date of that employee's petition. This notice of claim provision assures that a claimant will not rest upon his or her right for compensation until his or her employer becomes insolvent and then petition the SISF. Section 537(3) encourages employees to seek compensation at the earliest possible date, presumably when the claimant's employer may still be solvent.

On the other hand, apportionment concerns the relationship between an employer liable to pay the entire compensation to the claimant and a prior employer who might be partly responsible for causing the claimant's occupational disease.

"[A]ll prior employers, as defined elsewhere in the statute, for whom the injured employee has worked under conditions similar in nature to those from which his disease arose, are to be proportionately liable for payment of benefits awarded." *Derwinski v Eureka Tire Co,* 79 Mich App 750, 754; 263 NW2d 30 (1977) (footnote deleted).

Once the SISF is found to be a prior employer within the meaning of § 435, it is to be treated the same as any other prior employer. There is nothing contained in § 435 or § 537 that convinces us otherwise.

Therefore, we disagree with the WCAB's finding that the employer stands in the shoes of the employee seeking benefits from the SISF. We instead find that the opinion of the hearing referee is better reasoned.

We find the reliance on *Carter v Detroit Harbor Terminals Inc,* 414 Mich 498; 327 NW2d 257 (1982), by the SISF and WCAB misplaced. *Carter* did not interpret §§ 435 and 537(4). Rather, *Carter* determined that the SISF need not reimburse the *claimant* for benefits prior to the date the responsible bankrupt employer actually became insolvent within the meaning of § 537(2). While we agree with the SISF and WCAB that their interpretation protects the "fiscal integrity" of the SISF, *i.e.,* retains the SISF funds rather than those of the last employer or its insurer, which is laudable, we cannot find that a plain reading of the language of §§ 435 and 537 requires that result.

Reversed and remanded. No costs, the construction of a statute being involved.