SCOTT v JONES & LAUGHLIN STEEL CORPORATION (ON REMAND)

Docket Nos. 153808, 153809. Submitted March 10, 1993, at Detroit. Decided November 15, 1993, at 9:10 A.M.

Henry Scott, Sr., sought workers' compensation benefits after he began receiving disability pension benefits from Jones & Laughlin Steel Corporation. While the claim was pending, Jones & Laughlin filed for bankruptcy. A hearing referee granted an open award of benefits, determining that Scott sustained a disabling injury on his last day of work, that his wife was a factual dependent, and that his workers' compensation benefits and disability pension benefits were subject to coordination. Scott appealed to the Workers' Compensation Appeal Board, arguing for an earlier date of disability and against coordination of benefits. He also filed a claim with the Self-Insurers' Security Fund, which commenced paying seventy percent of the awarded workers' compensation benefits pending the appeal. Jones & Laughlin also appealed to the board, moving for vacation of the referee's decision on the ground that issuance of the decision was in violation of the bankruptcy stay. The board denied the motion and held the case in abeyance until the bankruptcy stay was lifted. The board eventually affirmed the referee's finding that disability was incurred on the last day of work and the ruling that the workers' compensation and disability pension benefits could be coordinated, but reversed the finding that Scott's wife was a factual dependent and rejected Scott's argument that the Self-Insurers' Security Fund was obligated to pay workers' compensation benefits retroactive to the date of the filing of the workers' compensation claim. Both Scott and Jones & Laughlin sought and were denied leave to appeal in the Court of Appeals. The Supreme Court, in lieu of granting leave, remanded the case to the Court of Appeals for consideration as on leave granted. 440 Mich 862 (1992). The appeals have been consolidated.

On remand, the Court of Appeals *held*:

1. Administrative Order No. 1990-6 constrains the Court of Appeals to follow *Corbett v Montgomery Ward,* 194 Mich App 624 (1992), and hold that Scott's wife is not a factual dependent of Scott under MCL 418.353(1)(b); MSA 17.237(353)(1)(b), as

applied by the *Corbett* panel to cases, like this one, where both spouses earn wages.

2. A disability pension plan established or renewed after March 21, 1982, like the plan involved in this case, is not automatically exempt from coordination pursuant to MCL 418.354(1)(d); MSA 17.237(354)(1)(d), but may be exempt if the plan so provides.

3. Under MCL 418.537; MSA 17.237(537) and MCL 418.502; MSA 17.237(502), the Self-Insurers' Security Fund becomes liable for a claimant's workers' compensation benefits on the date the employer becomes insolvent, not on the date of the filing of the workers' compensation claim.

Affirmed.

*Goodman, Eden, Millender & Bedrosian* (by *Diane M. Kwitoski*), for Henry Scott, Sr.

*Plunkett & Cooney, P.C.* (by *Paul F. Paternoster*), for Jones & Laughlin Steel Corporation.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Caleb B. Martin, Jr.,* Assistant Attorney General, for Self-Insurers' Security Fund.

ON REMAND

Before: GRIBBS, P.J., and HOLBROOK, JR., and NEFF, JJ.

HOLBROOK, JR., J. On remand by the Supreme Court for consideration as on leave granted, 440 Mich 862 (1992), plaintiff, Henry Scott, Sr., and his employer, defendant Jones & Laughlin Steel Corporation, appeal a decision of the Workers' Compensation Appeal Board, which affirmed with modification a hearing referee's decision to grant plaintiff an open award of benefits. We affirm. However, we affirm the finding that plaintiff's wife is not a dependent only because we are required to do so by Administrative Order No. 1990-6.

I

Plaintiff's last day of work for defendant was January 21, 1983. He received sickness and accident benefits through June 30, 1983. On July 1, 1983, he began receiving disability pension benefits under the collective bargaining agreement between his union and defendant.

On December 19, 1983, plaintiff filed a petition seeking workers' disability compensation benefits for physical injuries incurred before the last day of work, as well as for pulmonary and cardiovascular injuries incurred on the last day of work. On July 17, 1986, defendant filed a petition in the United States Bankruptcy Court for the Southern District of New York, seeking reorganization under Chapter 11 of the Bankruptcy Code. Notice was sent to the Bureau of Workers' Disability Compensation regarding the automatic stay provisions of the code.

On August 8, 1986, the hearing referee issued a decision finding plaintiff totally disabled on his last day of work. The referee also found that plaintiff had proven his wife to be a factual dependent.

Plaintiff appealed, arguing that the referee had erred in failing to find him disabled by the alleged earlier injuries, and also because the referee failed to find that plaintiff's workers' compensation and pension benefits could not be coordinated. Defendant appealed on the merits. In addition, defendant objected to the issuance of the referee's decision in light of the bankruptcy stay, and filed a motion to vacate the referee's decision. By order dated November 21, 1986, the WCAB denied defendant's motion and instead held the case in abeyance until such time as the bankruptcy court should lift the stay.

On July 31, 1986, plaintiff contacted the Self-Insurers' Security Fund (SISF) to make a claim pursuant to § 537 of the Workers' Disability Compensation Act, MCL 418.537; MSA 17.237(537). Section 537 authorizes payments from the SISF to disabled employees or their dependents when a private self-insured employer becomes insolvent and is unable to continue payments. By letter dated July 20, 1987, the SISF trustees informed plaintiff that he was entitled to benefits beginning on October 23, 1986, the date the bankruptcy court determined that defendant was unable to continue paying workers' compensation benefits. The SISF made seventy percent payments retroactive to October 23, 1986, to plaintiff during the pendency of the appeal to the WCAB.

On February 26, 1991, the WCAB issued an opinion and order affirming the referee's finding of disability, but reversing the referee's finding that plaintiff's wife was a factual dependent. The WCAB also rejected plaintiff's argument that his workers' compensation and disability pension benefits could not be coordinated. Finally, the WCAB rejected plaintiff's argument that the SISF was obligated to pay benefits retroactive to the December 1983 date when he filed his workers' compensation petition and instead agreed with the SISF that it was only obligated to make payments beginning October 23, 1986.

II

Although § 353 of the act, MCL 418.353; MSA 17.237(353), provides that the wife of an injured employee is conclusively presumed to be dependent, the Supreme Court has held the conclusive presumption to be unconstitutional. *Pike v City of Wyoming,* 431 Mich 589; 433 NW2d 768 (1988).

Therefore, in order for plaintiff to prevail on his claim that his wife is a factual dependent, he must meet the test set out in § 353(1)(b), which provides in part:

> In all other cases questions of dependency shall be determined in accordance with the fact, as the fact may be at the time of the injury . . . . Except as to those conclusively presumed to be dependents, no person shall be deemed a dependent who receives less than ½ of his support from an injured employee. [MCL 418.353(1)(b); MSA 17.237(353)(1)(b).]

The WCAB found that plaintiff's wife was not a dependent for the following reasons:

> The next issue for our consideration is whether or not Judge Chylinski erred in finding that plaintiff's wife was a dependent. We find that as of plaintiff's last day of work, he was making $586.25 per week, which would have given him an annual income of $30,485 for 1983. We also find that plaintiff's wife's 1983 income was $15,306.83. Plaintiff has argued that at the time plaintiff left work in January of 1983, his wife's income had been much less than half of their joint income and therefore, she was a dependent. However, our reading of MCL 418.353(1)(b); MSA 17.237(353)(1) (b) finds this argument without merit. Defendant has argued and we agree, that the Scotts' joint income for 1983 would have been $881.24 per week based upon Mrs. Scott's $294.36 and plaintiff's weekly wage of $586.88 [sic]. Half of that joint income equals $440.62. Mrs. Scott's income of $294.36 is more than half of this amount, thus, since Mrs. Scott contributed to more than one-half of her own support, we find that Judge Chylinski erred in finding plaintiff's wife as a dependent.

Plaintiff argues that the WCAB erred in applying

the statute, and contends that it is more equitable to apply an economic reality test to determine dependency. However, this Court recently upheld just the sort of analysis of factual dependency employed by the wcab in this case. *Corbett v Montgomery Ward,* 194 Mich App 624; 487 NW2d 825 (1992). Because *Corbett* is controlling authority pursuant to Administrative Order No. 1990-6, we are constrained to affirm the wcab's finding that plaintiff's wife was not a factual dependent. However, we note our disagreement with the analysis in *Corbett* and would hold that plaintiff's wife was a factual dependent for the following reasons.

Under *Corbett,* the income of the spouses are added together and the resultant sum is considered to be the family income. Half of that sum is allocated to each spouse for that spouse's maintenance and pleasure. The amount contributed for support of an alleged dependent is then determined by subtracting the alleged dependent's earnings from the amount allocated, i.e., one-half of the family income. If the amount contributed by the injured employee is less than one-half of the half allocated, or if the alleged dependent's income is more than one-fourth of the family income, the individual is not dependent. We believe that this method ignores the mutuality of the marital relationship, in which both spouses contribute to the common welfare and thus achieve a standard of living that neither could afford alone. The *Corbett* analysis supposes that the higher-income spouse contributes to the support of the lower-income spouse, but ignores the contribution of the lower-income spouse to the well-being of the other. For this reason, we would hold that each spouse's annual income is presumed to be split equally with the other spouse. A person whose income was less than that of the injured employee would then be

dependent within the meaning of the statute. Applied to this case, our method would split plaintiff's 1983 income of $30,485 equally between plaintiff and his wife, and likewise would split equally the wife's 1983 income of $15,306.83. Because plaintiff's wife would thereby be allocated $15,242.50 from plaintiff and $7,653.41 from her own earnings, she would be considered a factual dependent because she would have received more than one-half of her support from plaintiff.[1]

For these reasons, we would find that plaintiff's wife was a factual dependent but for the controlling decision in *Corbett.*

### III

Section 354(1)(d), MCL 418.354(1)(d); MSA 17.237(354)(1)(d), reduces an employer's obligation to pay workers' compensation benefits by the after-tax amount of pension and retirement payments received by an employee pursuant to a program established or maintained by the same employer if the employee did not contribute directly to the pension or retirement plan. However, subsection 14 provides:

> This section does not apply to any payments received or to be received under a disability pension plan provided by the same employer which plan is in existence on March 31, 1982. Any disability pension plan entered into or renewed after March 31, 1982 may provide that the payments under that disability pension plan provided by the employer shall not be coordinated pursuant to this section. [MCL 418.354(14); MSA 17.237(354)(14).]

---

[1] We note plaintiff's claim that the WCAB used incorrect figures. However, whether plaintiff's or the WCAB's figures are used, plaintiff's wife is not a dependent under *Corbett,* but is a dependent under the test outlined above.

There is no dispute that plaintiff's disability pension is paid pursuant to a plan entered into or renewed after March 31, 1982. There is also no dispute that the second sentence of § 354(14) means that disability pension benefits received pursuant to a plan entered into or renewed after March 31, 1982, are not automatically exempt from coordination, but may be exempt if the plan so provides.

Plaintiff argues that the WCAB erred in finding that his disability pension can be coordinated because the agreement under which it was established allows the employer to deduct from pension payments any workers' compensation payments made at the same time. Plaintiff claims that this amounts to an internal coordination provision that would expose him to a double deduction if his employer were also allowed to coordinate pursuant to the statute. However, the WCAB found that plaintiff's pension was not being reduced and that no amounts were being deducted for workers' compensation benefits. Defendant's supervisor of industrial relations testified that pension benefits are reduced by the amount of workers' compensation benefits only for nondisability pensions. Because there is competent evidence to support the WCAB's finding, we must affirm. *Spencer v Clark Twp*, 142 Mich App 63, 66; 368 NW2d 897 (1985), MCL 418.861; MSA 17.237(861).

Plaintiff also argues that § 354(14) applies only to pension plans that come into existence for the first time after March 31, 1982. However, under plaintiff's interpretation of the statute, the language regarding pension plans "renewed" after that date would be rendered a nullity. Because the pension plan at issue here was renewed pursuant to collective bargaining in 1983, plaintiff's disabil-

ity pension benefits are not automatically exempt from coordination.

Finally, plaintiff contends that even if disability pensions are not generally subject to setoff under the pension agreement, his disability pension is subject to setoff after he reaches age sixty-five. Plaintiff contends that he then will be subject to a double reduction pursuant to the pension plan's internal coordination provision and to the coordination provision of the act.

Plaintiff did not raise this issue below and it is therefore not preserved for appellate review. *Achtenberg v East Lansing*, 421 Mich 765, 773; 364 NW2d 277 (1985). Indeed, it was probably not raised for the very good reason that plaintiff would not turn sixty-five until 1992, well after the conclusion of the administrative proceedings. To the extent that double coordination occurs, plaintiff presumably can petition the Bureau of Workers' Disability Compensation for relief on the basis of a change in circumstances.

IV

Section 537 of the act, MCL 418.537; MSA 17.237(537), provides in part:

> (1) The trustees may authorize payment from the [SISF] upon request to the fund's administrator by a disabled employee or a dependent of the disabled employee as defined in section 331 who is receiving or is entitled to receive worker's compensation benefits from a private self-insured employer who becomes insolvent after November 16, 1971, and is unable to continue the payments.
>
> * * *
>
> (3) payments shall not be made from the [SISF] to an employee or a dependent of the employee as defined in section 331 for any period of disability

that is before the date of the request to the administrator or the date of the petition for hearing before the bureau.

In *Carter v Detroit Harbor Terminals, Inc,* 414 Mich 498; 327 NW2d 257 (1982), the Supreme Court held that the SISF is not required to pay benefits to a claimant for any disability before the day the employer becomes insolvent within the meaning of the statute. The Supreme Court specifically rejected a claim that benefits should be paid from the date of the filing of the petition. The decision was based in part on § 502 of the act, MCL 418.502; MSA 17.237(502), which provides:

> For the purposes of this act, an insolvent private self-insured employer means either an employer who files for relief under the bankruptcy act or an employer against whom bankruptcy proceedings are filed or an employer for whom a receiver is appointed in a court of this state.

Plaintiff argued to the WCAB that the SISF should be obligated to make payments from the date he filed his petition in December 1983. The WCAB, citing *Carter,* rejected this argument. Although plaintiff contends that the WCAB erred because *Carter* was wrongly decided, this Court is clearly in no position to overturn Supreme Court precedent. However, plaintiff has also endorsed defendant's argument that the SISF became liable when defendant filed for bankruptcy on July 17, 1986, or at the latest on July 31, 1986, when plaintiff gave notice of his claim to the SISF. The SISF responds that although defendant filed for Chapter 11 protection on July 11, 1986, the bankruptcy court's order of the same day authorized defendant to continue to pay workers' compensation benefits to its disabled workers, and that defendant did so in

many states but not in Michigan. It was not until October 23, 1986, that the bankruptcy court ruled that defendant acted properly in doing so. The SISF therefore argues that the WCAB properly held that the SISF was not responsible for benefits until October 23, 1986.

Because neither plaintiff nor defendant raised this issue below, it has not been preserved for appellate review. *Achtenberg, supra.* Moreover, we believe that the WCAB reached the correct result. Section 537(1) authorizes the SISF to make payments when a private self-insured employer "becomes insolvent . . . and is unable to continue the payments." We believe this statutory language reflects the fact that in many cases an entity that seeks bankruptcy protection continues to meet certain obligations. In this case, defendant was able to pay workers' compensation benefits in states other than Michigan after it filed its bankruptcy petition. In other words, even though defendant was insolvent within the meaning of § 502 on July 17, 1986, it was not unable to continue payments as required by § 537(1). We hold that unless and until the bankrupt entity is ordered by the bankruptcy court not to make such payments or is otherwise unable to continue payments within the meaning of the statute, the SISF is not liable for such payments.

Affirmed.