MURPHY v CITY OF PONTIAC

GRAVES v CITY OF PONTIAC (ON REMAND)

Docket Nos. 180653, 184030. Submitted July 17, 1996, at Detroit. Decided February 21, 1997, at 9:05 A.M. Leave to appeal sought.

The City of Pontiac, following changes in the collective bargaining provisions and municipal ordinances governing its employee pension plan, began in July 1990 to coordinate the worker's compensation disability benefits and disability pension benefits of Una Murphy and Dennis Graves. Murphy and Graves, in separate proceedings in the Bureau of Worker's Disability Compensation, contested the coordination of benefits. In both cases, the Worker's Compensation Appellate Commission decided that coordination was proper pursuant to § 354 of the Worker's Disability Compensation Act, MCL 418.354; MSA 17.237(354). The Court of Appeals denied Graves leave to appeal. The Supreme Court, in lieu of granting leave to appeal, remanded Graves' case to the Court of Appeals for consideration as on leave granted. 448 Mich 869 (1995). The Court of Appeals granted Murphy leave to appeal and consolidated Graves' appeal with Murphy's.

The Court of Appeals *held*:

Section 354 generally provides for coordination of benefits. Subsection 14 of § 354 exempts from coordination disability pension plans in existence on March 31, 1982, and provides that a disability pension plan entered into or renewed after March 31, 1982, may provide that the payments under that plan shall not be coordinated. When a disability pension plan entered into or renewed after March 31, 1982, is silent regarding the subject of coordination, that plan's benefits are subject to coordination pursuant to § 354.

In this case, changes to the disability pension plan as a result of collective bargaining that occurred after March 31, 1982, constituted a renewal of the plan within the meaning of § 354(14). In the absence of contrary language in the plan, coordination of worker's compensation benefits and disability pension benefits is permissible under § 354.

Affirmed.

WORKER'S COMPENSATION — DISABILITY PENSIONS — COORDINATION OF BENEFITS. Benefits received under a disability pension plan entered into or renewed after March 31, 1982, are subject to coordination with worker's compensation benefits received for the same disability in the absence of a provision in the pension plan stating that there shall not be coordination; a disability pension plan is renewed where it is changed as a result of collective bargaining (MCL 418.354[14]; MSA 17.237[354][14]).

*O'Connell, Roeser & Brennan* (by *Vicki L. Brennan*), for the plaintiffs.

*Hurbis, Cmejrek & Clinton* (by *Mary F. Clinton*), for the defendant.

Before: MARILYN KELLY, P.J., and MACKENZIE and J. R. ERNST*, JJ.

PER CURIAM. Plaintiffs Una Murphy and Dennis Graves, in these consolidated cases, appeal decisions of the Worker's Compensation Appellate Commission (WCAC), which allowed the City of Pontiac to coordinate their worker's disability compensation benefits with disability pension benefits pursuant to § 354 of the Worker's Disability Compensation Act, MCL 418.354; MSA 17.237(354). We affirm.

I

Plaintiff Murphy worked for the city from February 4, 1953, until March 1, 1985, when she quit work because of work-related carpal tunnel syndrome and knee injuries. The city voluntarily paid worker's compensation disability benefits, which amounted to $265 a week in May 1990. In addition, Murphy received disability pension benefits beginning in September 1985, which amounted to $235.75 a week by May 1990.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff Graves sustained a variety of injuries while working for the city, including a back injury on June 23, 1986. His last day of work was June 27, 1987. The city voluntarily paid him worker's compensation benefits for all time lost since the 1986 injury. In addition, in June 1988, Graves qualified for and began receiving a disability pension. In July 1990, his weekly worker's compensation benefit was $251.63, and his weekly disability pension benefit was $84.34.

The city paid both types of benefits to plaintiffs until July 1990. Thereafter, the city coordinated the benefits pursuant to § 354 of the act. As a result, Murphy's disability compensation benefit was reduced to $24.87 and Graves' benefit to $174.88 a week.

Plaintiffs filed separate petitions alleging that the city improperly coordinated benefits. Each plaintiff relied on subsection 14, which provides:

> This section does not apply to any payments received or to be received under a disability pension plan provided by the same employer which plan is in existence on March 31, 1982. Any disability pension plan entered into or renewed after March 31, 1982 may provide that the payments under that disability pension plan provided by the employer shall not be coordinated pursuant to this section.

Both cases were submitted on stipulated facts. It was stipulated that the pension plan, covering both disability and retirement pensions, was established in 1946. No single document serves as a unified pension plan. Instead, pension benefits are provided pursuant to various provisions in the city's charter and ordinances, as well as collective bargaining agreements. Since March 1982, various changes have been made to the pension plan as a result of collective bargaining and by amendment of ordinances. For example, the

age at which an employee is eligible for retirement was lowered, and the period used to calculate a retirement supplement was changed. It was further stipulated that the pension plan may only be changed by collective bargaining or by ordinance amendment. Although the plan is administered by a board of trustees, the board cannot change the plan.

In each case, a worker's compensation magistrate ruled that coordination was permissible because the pension plan had been "renewed" within the meaning of § 354(14) after March 31, 1982, by collective bargaining and by ordinance amendment. In each case, the WCAC affirmed.

This Court denied plaintiff Graves' application for leave to appeal. He applied to the Supreme Court for leave to appeal. In lieu of granting leave, the Supreme Court remanded to this Court for consideration as on leave granted. 448 Mich 869 (1995). This Court subsequently granted Murphy's application and ordered the two cases consolidated.

II

Plaintiffs argue that the WCAC erred because no disability pension plan was entered into or renewed after March 31, 1982, within the meaning of the statute. Plaintiffs maintain that changes to the plan after that date should not constitute renewal of the plan, maintaining that no dictionary definition of the word "renew" includes "change" or its synonyms. Plaintiffs maintain that no coordination is allowed in their cases because the pension plan at issue was in existence on March 31, 1982.

The city argues that the changes made to the pension plan as a result of collective bargaining and as a

result of ordinance amendments amount to renewals of the plan after March 31, 1982. Because the plan does not prohibit coordination, the city argues that coordination is permissible under § 354. We agree with the city.

Section 354 generally allows coordination of benefits. However, subsection 14 exempts from coordination disability pension plans in existence on March 31, 1982, the effective date of the coordination provision. That subsection further provides that the disability pension plan renewed or entered into after that date may exclude benefits from coordination. "If the plan is silent on the subject, disability compensation benefits are subject to coordination." *Sterner v McLouth Steel Products*, 211 Mich App 354, 355-356; 536 NW2d 225 (1995), citing *Scott v Jones & Laughlin Steel Corp (On Remand)*, 202 Mich App 408; 509 NW2d 841 (1993).

In *Scott*, the plaintiff argued that § 354(14) applies only to pension plans that come into existence for the first time after March 31, 1982. This Court disagreed, holding that the statute also applies to pension plans "renewed" after that date, and that the pension plan at issue was "renewed pursuant to collective bargaining in 1983." *Id.*, pp 415-416. We agree with this analysis and hold that changes in a pension plan as a result of collective bargaining constitute renewal of the plan within the meaning of § 354(14). We presume that the intent underlying this section is to prevent retroactive application of the act's coordination provisions and thus protect retirees who may have retired on the assumption that their worker's compensation and disability pension benefits would not be coordinated. However, the second sentence of subsection 14

implies that the Legislature also intended to allow employees and representatives of employees to bargain with employers regarding coordination after March 31, 1982. In the event that such bargaining does not result in a prohibition against coordination, the statute provides that coordination is permitted.

The pension plan at issue here was changed as a result of collective bargaining after March 31, 1982. We hold that the plan was "renewed" within the meaning of § 354(14) and that coordination was permissible in the absence of any language to the contrary. In light of this holding, we find it unnecessary to resolve the separate question whether the plan should be considered "renewed" as the result of an employer's unilateral changes, such as amendments of the city's ordinances governing the plan.

Affirmed.