# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT ARBUCKLE, Personal Representative
of the Estate of CLIFTON M. ARBUCKLE,

UNPUBLISHED
February 10, 2015

Plaintiff-Appellant,

v

No. 310611
MCAC
LC No. 11-000043

GENERAL MOTORS LLC,

Defendant-Appellee.

Before: STEPHENS, P.J., and HOEKSTRA and METER, JJ.

PER CURIAM.

Plaintiff[1] appeals by leave granted a May 7, 2012, order entered by the Michigan Compensation Appellate Commission (MCAC) that reversed the magistrate's decision that reduction of plaintiff's workers' compensation benefits by defendant was improper. We reverse and remand for further proceedings.

Plaintiff began his employment with defendant in 1969. During his employment, plaintiff was represented by his union, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW). Plaintiff was injured during the course of his employment in 1991. On May 1, 1993, he began receiving a total and permanent disability pension. On February 25, 1995, a workers' compensation magistrate awarded plaintiff workers' compensation benefits at a fixed rate of $362.78 a week, 80 percent of plaintiff's after-tax weekly wage at the time of his injury. Pursuant to a pension agreement and a 1990 Letter of Agreement, plaintiff's workers' compensation benefits were not reduced by his disability pension benefits.[2] At some point, plaintiff also began receiving Social Security Disability Insurance (SSDI) benefits.

---

[1] Clifton Arbuckle died during this appeal. For ease of reference, this opinion uses the term "plaintiff" to refer to him and not to his personal representative.

[2] A 1990 Letter of Agreement provided:

Pursuant to Subsection 354(14) of the Michigan Workers Compensation Act, as amended, until termination or earlier amendment of the 1990 Collective

-1-

In 2007, defendant and the UAW engaged in negotiations regarding its active members and future disability retirees. A contractual Letter of Agreement was reached, applicable to employees retiring after the effective date of the 2007 agreement, which permitted defendant to apply a new formula when determining whether a disability retiree's workers' compensation benefits could be reduced. The agreement provided:

> Pursuant to Subsection 354(14) of the Michigan Workers Compensation Act, as amended, until termination or earlier amendment of the 2007 Collective Bargaining Agreement for employees who are injured and retire on or after October 1, 2007, *workers' compensation payments* for such employees shall be reduced by *disability retirement benefits* payable under the Hourly-Rate Employees Pension Plan *to the extent* that the combined *workers' compensation payments*, initial *Social Security Disability Insurance Benefit* Amount, and the initial *disability retirement benefit* (per week) exceed the employee's gross Average Weekly Wage at the time of the injury . . . . [Emphasis added.]

Then, in 2009, under severe financial strain, defendant renegotiated with the UAW for what defendant characterizes as a "compromise," wherein the 2007 Letter of Agreement would encompass a larger group of former employees, those that retired from defendant before January 1, 2010.

Elizabeth LaMarra, defendant's manager of life insurance and disability plans, explained the nature of the 2009 "compromise" reached between defendant and the UAW that would permit defendant to coordinate pension benefits and workers' compensation benefits. LaMarra explained:

> So we looked at a smaller pool of people that we would be able to coordinate pension and Workers' Comp as allowed for under the State statute, but we would only look at people who, once we went through this test or this formula that's indicated in this letter, that between their pension, their Workers' comp, their initial Social Security, if you added all those together and it was greater than their average weekly wage, those would be the people that we could coordinate their pension with their Workers' Comp. We were demonstrating to the union that employees were making more money not working than they were working looking at initial Social Security, initial pension and their Workers' compensation.

On November 16, 2009, plaintiff was advised that his workers' compensation benefits would be reduced pursuant to this new formula. In a correspondence dated January 19, 2010, defendant advised plaintiff:

> As a result of the 2009 General Motors and UAW contract negotiations and Subsection 354(14) of the Michigan Workers Compensation Act, retired

Bargaining Agreement, workers compensation for employees shall not be reduced by disability retirement benefits payable under the Hourly-Rate Employee Pension Plan.

employees may be impacted by coordination of their weekly workers' compensation benefit effective January 1, 2010. This coordination would apply to the extent that the combined workers compensation payments, initial Social Security Disability Insurance Benefits amount and the initial disability retirement benefit (per week) exceed the employee's gross Average Weekly Wage at the time of injury.

A review of your claim was conducted which indicates the following benefits being received or awarded:

Weekly Workers Compensation - $362.78

Initial Social Security Disability Insurance Benefit - $238.57

Initial Disability Retirement Benefit - $169.45

Average Weekly Wage at the time of the injury - $655.69

Therefore as a result of the above, coordination will apply and your weekly workers compensation rate will be $262.55 as of January 1, 2010.

After defendant implemented the reduction of plaintiff's workers' compensation benefits, plaintiff requested a hearing before the director of the Workers' Compensation Agency. The thrust of plaintiff's objection to coordination of benefits was that defendant's formula violated MCL 418.354(11) because it used SSDI benefits to offset the workers' compensation benefit.

At the hearing, Aaron Dickerson, an employee of defendant's third-party benefits administrator, testified that SSDI benefits were not being used to set off plaintiff's workers' compensation award. Instead, Dickerson explained that plaintiff's disability pension was being coordinated with workers' compensation benefits, and SSDI benefits were "only mentioned because it just helped calculate his weekly amount of benefits, that's it." Dickerson further testified that the "total weekly benefits" was to be used as a "cap." Dickerson also acknowledged that under the 1990 collective bargaining agreement (CBA), workers' compensation benefits could not be reduced by disability pension benefits. However, under the 2007/2009 Letter of Agreement, coordination of those benefits was permissible. According to Dickerson, plaintiff's workers' compensation benefits were reduced because of the coordination with his disability pension benefits, not because of a coordination with SSDI benefits.

On November 3, 2010, Director Jack A. Nolish issued his opinion finding that defendant had improperly reduced plaintiff's workers' compensation benefits. Director Nolish initially noted that all parties agreed that MCL 418.354(11) prohibited the use of SSDI benefits as a set-off when calculating workers' compensation benefits. Director Nolish then concluded that defendant was considering plaintiff's SSDI benefits when calculating the amount of plaintiff's workers' compensation benefits. Director Nolish found:

By the wording of the agreement, GM is not taking a set-off in this case for Mr. Arbuckle's SSDIB benefit. However, by using the SSDIB payment in

combination with the disability pension, the pension dollars are pushed beyond the limit of the "cap" resulting in the pension set-off reducing Mr. Arbuckle's weekly benefits. If the SSDIB payment was not in the equation, there would not be any set-off for the pension. How then can it be said that the SSDIB payment is not being used for coordination of benefits.

Director Nolish concluded that defendant's reduction of plaintiff's workers' compensation benefits violated MCL 418.354(11).

Director Nolish raised, but declined to consider, an alternative issue: whether the 2009 agreement, which permitted defendant to use the disability pension benefits as a workers' compensation set-off, applied to plaintiff, who retired at a time when his 1990 CBA precluded such set-offs. Director Nolish pondered this issue but did not resolve it. Ultimately, Director Nolish ordered defendant to recalculate plaintiff's "reduced weekly benefit rate as originally ordered . . . less any appropriate pension set-off that does not take into account SSDIB benefits."

Thereafter, defendant appealed Director Nolish's order to the Workers' Compensation Board of Magistrates. On March 10, 2011, Magistrate Kenneth A. Birch issued his opinion and order finding that defendant had improperly reduced plaintiff's workers' compensation benefits. However, Magistrate Birch's ruling employed a different analysis than that used by Director Nolish. Magistrate Birch concluded that the use of the SSDI benefits to determine the amount of disability pension to be coordinated with workers' compensation benefits did not violate MCL 418.354(11). However, according to the magistrate, a reduction of plaintiff's workers' compensation benefits was still improper. The magistrate noted that at the time of plaintiff's retirement, he had a contract that prohibited the coordination of his pension benefits with his workers' compensation benefits. The magistrate further acknowledged that in 2009, defendant and the UAW agreed to allow some coordination of all disability pensions. The magistrate then found that there was insufficient evidence to establish that the UAW had authority to bargain on plaintiff's behalf and bind him to the 2009 Agreement. Magistrate Birch noted that in 2009, as a retiree, plaintiff had no voting privileges and no representation with respect to the negotiation of the 2009 amendments to the CBA. Magistrate Birch ruled that defendant was "prohibited from coordinating Plaintiff's disability pension with weekly worker's compensation benefits."

Thereafter, defendant appealed the magistrate's decision to the MCAC, arguing that the magistrate erred when it found that the UAW lacked authority to bind plaintiff to the 2009 Agreement. Plaintiff similarly appealed, arguing that the magistrate erred when it concluded that defendant did not violate MCL 418.354(11). By order entered on May 7, 2012, the MCAC reversed the magistrate's ruling on the UAW's authority to bind retirees and affirmed the magistrate's finding that defendant did not violate MCL 418.354(11).

First, the MCAC considered, in general, an employer's ability to coordinate pension disability benefits and workers' compensation benefits. The MCAC cited MCL 418.354(14), which states:

> This section does not apply to any payments received or to be received under a disability pension plan provided by the same employer which plan is in existence on March 31, 1982. Any disability pension plan entered into or

-4-

renewed after March 31, 1982 may provide that the payments under that disability pension plan provided by the employer shall not be coordinated pursuant to this section.

The MCAC then cited this Court's opinion in *Murphy v City of Pontiac*, 221 Mich App 639, 643; 561 NW2d 882 (1997), wherein this Court noted that Section 354 generally allows for coordination of benefits, unless a disability pension plan renewed or entered into after March 31, 1982, excludes benefits from coordination. Applying MCL 418.354(14) and *Murphy* to the instant matter, the MCAC reached the following legal conclusions:

> If, [sic] the UAW possessed the authority to bargain for plaintiff, then *Murphy* applies. We find that the *Murphy* case confirms defendant's statutory authority to coordinate plaintiff's disability pension based on the changes to the agreement after plaintiff retired. The facts of *Murphy* are indistinguishable from the facts of this case. In both cases the amendments occurred after the retirement. Therefore, the magistrate erred when he forbade coordination under *Murphy*.

> Alternatively, if the later amendments did not bind plaintiff because the UAW lacked the authority to bargain for plaintiff, then the amendments also would not protect plaintiff. In that case, plaintiff's agreement with defendant expired when the UAW and defendant entered a new collective bargaining agreement (CBA). When the agreement that plaintiff actually ratified expired, the prohibition against coordination also expired. Without that prohibition, defendant may coordinate all of plaintiff's disability pension. Therefore, coordinating less than the entire pension complies with defendant's statutory right.

After concluding that defendant had the authority to coordinate plaintiff's pension disability benefits with his workers' compensation benefits, the MCAC found, as a matter of law, that the method in which defendant calculated the reduction did not violate MCL 418.354(11), i.e., that it did not improperly use the amount of SSDI benefits to calculate the reduction. The MCAC reversed the magistrate's decision and allowed defendant to coordinate plaintiff's disability pension using the terms of the 2009 amendment to the CBA.

Plaintiff now appeals. The MCAC reviews the magistrate's findings for compliance with the substantial evidence standard set forth in MCL 418.861a(3); this Court, however, reviews the MCAC's findings to ensure the integrity of the administrative process. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 698-699, 701; 614 NW2d 607 (2000). "If there is any evidence supporting the WCAC's factual findings, and if the WCAC did not misapprehend its administrate appellate role in reviewing decisions of the magistrate, then the courts must treat the WCAC's factual findings as conclusive." *Id*. at 709-710. However, the MCAC's decision may be reversed if it operated within the wrong legal framework or based its decision on erroneous legal reasoning. MCL 418.861a(14); *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401-402; 605 NW2d 300 (2000). Issues of law are reviewed de novo by this Court. *Id*. at 401.

Under the specific circumstances of this case, we find that the MCAC erred in concluding that defendant had the authority to coordinate plaintiff's benefits. We agree with the reasoning of Magistrate Birch.

It is not disputed that under the 1990 CBA, coordination of workers' compensation benefits with disability retirement benefits was not allowed. Dickerson answered "Correct" when asked, "Okay, and you know that people that retired in 1990 on disability pension didn't see their Workers' Comp benefits get reduced by disability pension amounts if they retired under the 1990 contract, correct?" LaMarra answered "True" when asked, "employers [sic] that retire under different contracts have different entitlements based on when they retired, correct?" She further stated that "you retire under a pension plan contract based on your retirement date."

While it is true that the 1990 Letter of Agreement stated that coordination was prohibited "until termination or earlier amendment of the 1990 Collective Bargaining Agreement," when defendant attempted to amend the terms of plaintiff's benefit structure, plaintiff, as a retiree, had no representation. Indeed, the record contains no evidence that plaintiff authorized the UAW to act as his representative to modify the 1990 agreement under which he retired. In *Murphy*, 221 Mich App at 643-644, the Court discussed whether an amendment of a CBA allowing previously disallowed coordination of benefits constituted a "renewal" of a pension plan such that the coordination was lawful. The Court upheld coordination and held that "[t]he pension plan at issue here was changed as a result of collective bargaining . . . ." *Id*. at 644. However, the crucial distinction between *Murphy* and the present case is that in *Murphy*, *id*. at 642, the parties had stipulated that "the pension plan may . . . be changed by collective bargaining or by ordinance amendment." There was no such stipulation in the present case. It is simply not tenable that a contract could be amended with respect to a particular party when that party had no representation during the amendment process.

In *Murphy*, *id*. at 643-644, the Court stated:

> We . . . hold that changes in a pension plan as a result of collective bargaining constitute renewal of the plan within the meaning of § 354(14). We presume that the intent underlying this section is to prevent retroactive application of the act's coordination provisions and thus protect retirees who may have retired on the assumption that their worker's compensation and disability pension benefits would not be coordinated. However, the second sentence of subsection 14 implies that the Legislature also intended to allow employees and representatives of employees to bargain with employers regarding coordination after March 31, 1982. In the event that such bargaining does not result in a prohibition against coordination, the statute provides that coordination is permitted.

Here, there was no "bargaining" between plaintiff and the UAW with regard to the allowance of coordination.

The MCAC found that even if a proper amendment did not occur because of a lack of representation for plaintiff, then the earlier CBA "expired," thus allowing a coordination of benefits. This is an untenable conclusion. LaMarra specifically testified that "there is only one pension plan," and she went on to explain that agreements such as the 2007/2009 letter essentially would modify this one plan. As noted, LaMarra answered "True" when asked, "employers [sic] that retire under different contracts have different entitlements based on when they retired, correct?" There is no indication that defendant entered into any *new* agreement *with*

-6-

*plaintiff*. There were amendments or attempted amendments, not "terminations."[3] Under the circumstances, we reverse the decision of the MCAC and remand for further proceedings.[4]

We note, briefly, that defendant argues that the MCAC did not have jurisdiction in this case because it involved interpretation of a CBA. This argument is without merit because the present case originated as a workers' compensation issue and the CBA was raised as a defense. See, generally, *Caterpillar, Inc v Williams*, 482 US 386, 398-399; 107 S Ct 2425; 96 L Ed 2d 318 (1987).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Patrick M. Meter

---

[3] We note that the 2007 agreement explicitly refers to itself as an "amendment."

[4] To the extent certain unpublished or otherwise nonbinding cases suggest a different outcome, we do not find them persuasive.