Caroline K. Simon, J.
The respective infant claimants sue through their guardians ad litem to recover for personal injuries sustained by them while playing within an abandoned building, situated within the City of New York, owned by defendant, and formerly used as a recreation center for medical students at Long Island College Hospital. Claimants allege that the premises in question constituted a trap or an inherently dangerous structure so as to cast liability on the defendant for resultant foreseeable injury at common law, or, in the alternative, a public nuisance as defined in the Administrative Code of the City of New York (§§ C26-193.0, 564-15.0, 564-17.0) which public nuisance the defendant was under a statutory duty to abate. The parties stipulated that the two claims would be tried together and that separate: judgments would be entered.
Both claimants and two other witnesses who played in the building testified that they had been continually using the premises as a play area from late 1956 through the accident dates, that the gate from the street area and the door on the lower basement floor entrance were never in place on any of these occasions, and that the interior of the premises was littered with debris, including broken doors, garbage, glass, fallen plaster, pieces of iron and other refuse. They also testified that *315 they had never been “ chased ” from the place by any guard or any police officer, and never saw anyone board up the doors and/or the windows. They agreed, however, that the windows facing the front of the building on the parlor floor level were boarded up at all times.
Claimant Hatfield stated that his injuries were caused by a fall on a door lying amid debris which formerly had been attached to the entryway leading to the stairway that connected the parlor floor of the building to the upper landings. His injury is stated to have occurred on July 9, 1957, at which time he was 8 years old. Claimant Moore, Jr., testified that his injuries were the result of a fall on a carriage bar lying on the floor in the immediate vicinity of the open metal door through which he entered the ground floor level of the building, his injury occurring on July 11, 1957, when he was 12 years old.
Under cross-examination, claimants conceded that they had been warned repeatedly by their parents not to enter the premises and that they were aware of the general deteriorated condition of the interior of the premises, and the existence of the various doors and “ debris ” strewn on the floors thereof.
The defendant introduced the testimony of a maintenance supervisor from an adjoining building who testified that he had frequently found the doors of the abandoned building to be open and had taken it upon himself to put a chain on to secure the basement iron-grating door. He further testified that he had deputized one of the guards on his own staff to patrol the building since he had observed boys playing there and was afraid that they might set fire to the premises and that the flames might spread to the Sloan Kettering Clinic building for the maintenance and care of which he was responsible. He admitted that periods of almost two-week duration might elapse from the time he would observe the doors to be open, and the resumption of work and that he would notify the State authorities or the local police on each such occasion since he was not responsible for the building’s security.
Defendant also introduced the testimony of a chauffeur who stated that he had made weekly inspections of the premises as part of his duties while in defendant’s employ, and that whenever he found an open door he would notify his supervisor, Mr. Bench, of this fact and always on the same afternoon or the following day bring carpenters to the building, at Mr. Bench’s direction, to secure the building entrances from trespassers. Examinations before trial of witnesses employed as repairmen corroborate this testimony and reveal that on four or five occasions during the year 1957 they had been required to secure *316 the doors and reboard the windows of the premises and that this was necessitated by the fact that trespassers had repeatedly broken into the building and left doors and windows open.
The first issue that must be resolved is the exact status of claimants. The evidence presented leaves no doubt that these infants were trespassers as a matter of law. “ Although defendant may have known that persons including children were entering onto the property, such knowledge did not constitute an invitation to such persons to so continue ” (Beauchamp v. New York City Housing Auth., 12 N Y 2d 400, 404).
The court must now determine whether the defendant violated any duty owed claimants.
The Court of Appeals recently restated the nature and extent of defendant’s common-law duty to infant trespassers to be refraining from inflicting willful, wanton or intentional injuries, with the corollary principle that the affirmative creation of a trap or the maintenance of an inherently dangerous article without the exercise of a high degree of care to prevent foreseeable injury to others is deemed the equivalent of a willful, wanton or intentional act. Moreover, and of particular significance, an abandoned open structure, so rotted and dilapidated that it is in imminent danger of collapse, has been held to constitute such a trap or inherently dangerous instrumentality. (See Beauchamp v. New York City Housing Auth., supra, citing with approval Runkel v. City of New York, 282 App. Div. 173; Runkel v. Homelsky, 286 App. Div. 1101, affd. 3 N Y 2d 857.)
The court in Beauchamp concluded that the Bunkel decision, which concerned itself with a structure in an imminent state of collapse, must be distinguished from a case of injury to a trespassing infant caused by a nonstructural defect, such as a fall from an upper story window. In the latter situation, an owner has been held not liable to the infant for injuries sustained by reason thereof.
Applying these common-law principles to the instant matter, the court must conclude that the evidence does not warrant the imposition of liability upon defendant. The injuries sustained by the claimants herein were in fact caused by nonstructural defects, and there was no proof of any willful, wanton or intentional acts on the defendant’s part. In fact there is affirmative evidence to show, defendant’s attempts to keep the building closed.
The majority in[Beauchamp defined the ambit of an owner’s responsibility under the afore-mentioned provisions of the Administrative Code as an alternate theory on which to predicate liability. 1 ■
*317 This court has considered the question of whether claimants properly can rely on a statutory provision of a municipality which, as will he seen, does not impose absolute liability but merely defines the standard of care to be exercised with regard to vacant buildings in the interest of the general public, as also defining the responsibility of the State.1 Both sides were given the opportunity at the conclusion of the trial to submit memoranda of law on this precise issue, which was raised by claimants. Such memoranda were not submitted.
Section C26-193.0 of the Administrative Code of the City of New York, provides in pertinent part: “ Any structure * * * that from any cause may at any time become dangerous * * * shall be taken down and removed or made safe and secure. * * * Any vacant building unguarded or open at door or window shall be deemed dangerous ”. Moreover, a vacant building therein described comes within the definition of a public nuisance as found in section 564-15.0 of the code: “ The word ‘ nuisance shall be held to embrace public nuisance, as known at common law or in equity jurisprudence; whatever is dangerous to human life or detrimental to health”. It is also noteworthy that a willful omission or refusal of “ any individual, corporation or body ” to abate such a nuisance upon proper notice constitutes a misdemeanor. (§ 564-16.0.)
It is an uncontestable legal tenet that the State governs its municipalities and that a municipality may not encroach directly or indirectly upon the sovereign powers of the State, save by specific provision or unmistakable legislative intent to the contrary. (People v. Roe, 40 Misc 2d 924; Gould v. State of New York, 196 Misc. 488.)
The court is aware of the express provision in the New York Constitution for the conferment by the State Legislature of legislative powers upon municipalities (art. IX, §§ 11, 12). Local laws may not be inconsistent with the State Constitution, or State laws. (Art. IX, § 12.)
Viewed in this context the court concludes that although the City of New York has inherent authority to require private or municipal property owners to abate a public nuisance defined to include a building “ unguarded or open at door or window ” and to make the willful failure or refusal to do so punishable as a misdemeanor, such legislation would constitute an unconstitutional abridgement of the governmental immunity of the sovereign if applied to the State. The thrust of the instant local legislation is penal, and the State expressly limited applicable criminal sanctions to private property holders under the provisions of subdivisions 1 and 4 of section 1530 and subdivision 1 *318 of section 1533 of the Penal Law which define public nuisances and includes within that definition “ A person who: 1. Lets, or permits to be used, a building * * * knowing that it is intended to be used for committing or maintaining a public nuisance ”. Nowhere in the afore-mentioned legislation does the court perceive any legislative intent to include the sovereign as a “ person ” subject to prosecution.
Any civil liability is predicated on the statutory definition contained in the afore-mentioned code provisions, since the Penal Law does not explicitly include an abandoned structure within the pertinent definition of “ public nuisance ” set forth in section 1530: “A ‘ public nuisance ’ is a crime against the order and economy of the State, and consists in unlawfully doing an act, or omitting: to perform a duty, which act or omission: 1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or, * * * 4. In any way renders a considerable number of persons insecure in life, or the use of property.”
As noted previously, at common law the sovereign as a property owner is liable to infants who trespass on abandoned property only for the infliction of willful, wanton or intentional injuries, with one exception, i.e., the maintenance of an abandoned building in a state of imminent collapse, a situation not proven to be the fact in the instant matter. A reading of the code provisions reveals that the New York City authorities did not amplify or extend the definition of ‘1 public nuisance ’ ’ beyond that known to the common law. (§ 564AL5.0.)
There is an independent ground on which this court has decided the issue of liability without recourse to the issue of sovereign immunity, since the court is satisfied that the claimants have failed to preponderate in their proof that defendant breached any statutory duty owing to them.
That duty has been defined by the Court of Appeals in Beauchamp v. New York City Housing Auth. (12 N Y 2d 400, supra) where the instant code provisions were relied upon by a trespassing infant plaintiff to impose absolute liability upon the city. The court rejected such construction, and held that the duty was grounded in negligence and required that the owner merely ameliorate the danger by providing adequate safeguards to avoid injuring others within the bounds of what is reasonable and practicable. Reasonable safeguards were carefully limited to findings that the doors and windows had been adequately secured to prevent access, together with reasonable inspections to insure the maintenance of said security.
*319 Defendant’s proof demonstrates that the building authorities exercised reasonable care to secure the premises and to maintain such security.
The court makes no determination as to whether claimants have established their freedom from contributory negligence as being superfluous in view of its finding of nonliability.
This constitutes the decision of the court in conformity with the requirements of section 4213 of the Civil Practice Law and Rules.
Both sides submitted proposed findings of fact and conclusions of law which have been marked, except claimant’s proposed Findings Nos. 19 and 24 submitted in connection with Claim No. 37974, Nos. 18 and 23 submitted in connection with Claim No. 37975; and defendant’s proposed Finding No. 22 and Conclusion No. 11 submitted in connection with both claims.
Let separate judgments be entered accordingly.