BLITMAN CONSTRUCTION CORP., Respondent, v KENT VILLAGE HOUSING COMPANY, INC., Respondent, and DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT OF THE CITY OF NEW YORK, Appellant.

First Department, January 18, 1983

#### APPEARANCES OF COUNSEL

*Fay Leoussis* of counsel (*Carolyn E. Demarest* with her on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

*Julius L. Schapira* of counsel (*David A. Trager* and *Kalvin Kamien* with him on the brief; *Max E. Greenberg Cantor & Reiss,* attorneys), for Blitman Construction Corp., respondent.

*Joseph Delman* of counsel (*Whitehorn & Delman, P. C.,* attorneys), for Kent Village Housing Company, respondent.

#### OPINION OF THE COURT

MURPHY, P. J.

Defendant Kent Village Housing Company, Inc. (Kent) is a limited-profit housing company organized pursuant to the Not-For-Profit Corporation Law and article 2 of the Private Housing Finance Law. Defendant Department of

Housing Preservation and Development of the City of New York (HPD) is the "supervising agency" charged with managing and controlling limited-profit housing companies in New York City (Private Housing Finance Law, § 2, subd 15; § 13, subd 13; § 32). HPD is the successor of the Housing and Development Administration (HDA). For purposes of this memorandum, all references will simply be made to HPD.

On January 8, 1974, loan and mortgage agreements were executed by Kent and HPD. Pursuant thereto, the City of New York loaned $26,562,100 to Kent for the development of an urban renewal project in Brooklyn. The city acquired a mortgage on the land and the buildings as security. The loan contract contains many provisions mandated by article 2 of the Private Housing Finance Law. For example, paragraph 2 of the loan contract satisfies the requirements of section 26 (subd 1, par [c]) of the Private Housing Finance Law with reference to HPD's approval of final plans and specifications.

On January 8, 1974, Kent also entered into a construction contract in the sum of $22,212,700 with plaintiff Blitman Construction Corp. (Blitman). Again, many provisions in the construction contract reflected the fact that HPD was the "supervisory agency" over the construction project. In article 1 of the construction contract, HPD was termed the "Administration" for that contract. Articles 2 and 49 are particularly pertinent to this discussion and are thus set forth in their entireties:

"ARTICLE 2. SUPERVISION BY HOUSING AND DEVELOPMENT ADMINISTRATION

"The Contractor understands that the work herein provided to be done is to be financed by a building loan mortgage between the Owner as Borrower and The City of New York as Lender. The work to be done by the Contractor shall at all times be subject to the supervision, regulation and approval of the Administration and its duly authorized representatives. Such representatives shall consist only of the Bureau Chief of Housing and Facilities Production of said Administration, and such employees or other persons as the Administration or the Bureau Chief

may specifically designate and authorize in writing. The supervision, regulation or approval of the Administration set forth in this Contract may be exercised by said representatives only to the extent permitted by such written authorization.

"Whenever any statements, documents or data of any sort, nature or description are required under this contract to be submitted to the Architect or Owner, or both, duplicates of such statements, documents or data shall be likewise submitted to the Administration. The approval of the Administration shall be a condition precedent to any action being taken or not taken hereunder, or a prerequisite to the exercise by the parties hereto of any right or right hereunder, including the right to receive payment under this contract * * *

"ARTICLE 49. GOVERNMENTAL SUPERVISION

"The Contractor understands and recognizes that the Owner is a limited-profit housing company subject to the provisions of said Limited-Profit Housing Companies Law and to the rules, regulations and supervision of the Commissioner of Housing and Community Renewal of the State of New York and the Housing and Development Administration of the City of New York. It is hereby agreed that this contract shall not become effective prior to approval thereof by the Housing and Development Administration of The City of New York.

"Wherever, throughout the Contract Documents, the judgment, discretion or opinion of the Administration is determinative of any matter, such determination shall be made in a reasonable manner and upon reasonable cause, and shall not be arbitrary or capricious. In the event that any party shall not accept the decision of the Administration on any item, the reasonableness of the decision of the Administration shall be determined by arbitration as provided for in the General Conditions of this Contract. In any other dispute arising between the parties, reasonable standards shall also apply and be used to determine the actions of the parties hereto".

In the amended complaint, Blitman seeks damages of $3,977,474.12 on behalf of itself and certain subcontrac-

tors. Damages are sought for work performed; they are also requested for an extended work stoppage ordered by HPD. Punitive damages are sought in the sum of $1,392,152.40. The chief thrust of the complaint against HPD is that Kent acted as its agent in executing the construction contract. Blitman further alleges that HPD ratified the construction contract through countless acts before, during and after construction. It was alleged, *inter alia,* that HPD had (i) entered into two separate contracts with Kent on December 27, 1973; (ii) approved, modified and changed various plans and specifications; (iii) accepted and rejected items of work; (iv) negotiated directly with subcontractors; (v) determined the amount to be paid for changes in work.

Kent moved to dismiss the amended complaint on the ground that it had acted as an agent for a disclosed principal, HPD. Special Term denied that motion on the strength of the allegations in the amended complaint and on the statements set forth in the affidavits submitted by Blitman and HPD. The denial of that motion is not the subject of this appeal.

HPD also moved to dismiss on the ground that no cause of action was stated against it (CPLR 3211, subd [a], par 7). It contended that the amended complaint should be dismissed as against it since it was not a party to the construction contract. Special Term denied the motion under the theory that HPD might be estopped from denying responsibility on account of the control it had exercised over Blitman.

On a motion to dismiss a complaint for legal insufficiency, we must accept the facts alleged as true and determine simply whether those facts fit within any cognizable legal theory (*Morone v Morone,* 50 NY2d 481, 484). In this proceeding, the eight causes in the amended complaint against HPD are grounded in breach of contract. However, HPD was not a party to the construction contract. In articles 1, 2 and 49 of that contract, both Blitman and Kent recognized that HPD would be the "Administration", i.e., the "supervising agency" under the Private Housing Finance Law. It was further emphasized in article 2 that the city, through HPD, was the "Lender".

Moreover, it should be stressed that the construction contract was not publicly bid. It was a private contract between Blitman and Kent. Under articles 14, 27 and 41 of the construction contract, the parties were required to look to each other for their contractual remedies. In this contractual and statutory setting, the purported acts of ratification by HPD are actually its supervisory acts over the project. These supervisory acts, as pleaded, can in no way be considered unauthorized acts of control or interference that might make it accountable in this action.

Likewise, HPD did not become a party to the construction contract by reason of its two letter agreements with Blitman. Those two letter agreements were executed before the closing upon the construction contract. The first letter agreement reflects an understanding that certain items and modifications would be incorporated into the construction contract. The second letter agreement confirms an understanding that any savings may be used to cover shortages. It is quite clear that HPD entered into these letter agreements in contemplation of the closing and in its capacity as the "supervisory agency".

It is unnecessary to reach the question of whether an agency relationship existed between Kent and HPD. The facts alleged and the accompanying documentation conclusively show that Kent, as a party to the construction contract, was to bear responsibility for any breach (*Renel Constr. v Brooklyn Coop. Meat Distr. Center*, 59 AD2d 391, affd 46 NY2d 859; *John Mee, Inc. v Mins Plaza Housing Co.*, NYLJ, Aug. 21, 1979, p 6, col 3 [SHAPIRO, J.], affd 86 AD2d 505, mot for lv to app den 56 NY2d 505).

Accordingly, the order of the Supreme Court, New York County (GOMEZ, J.), entered February 8, 1982, which denied HPD's motion to dismiss the complaint as against it, should be reversed, on the law, and the motion should be granted, with costs.

Ross, SILVERMAN, FEIN and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on February 8, 1982, unanimously reversed, on the law, and

the motion granted. Appellant shall recover of respondents one bill of $75 costs and disbursements of this appeal.