OPINION OF THE COURT
Martin Shulman, J.
Plaintiff Mounir A. Khalil[1] commenced this action against defendants “State of New York, City University of New York, City College” (collectively the defendants).,[2] asserting six causes of action against defendants predicated upon age discrimination in violation of the Age Discrimination in Employment Act of *779 1967 (ADEA) (29 USC § 621 et seq., as amended), the New York State Human Rights Law (NYSHRL)[3] and the New York City-Human Rights Law (NYCHRL)[4] (first, third and fifth causes of action, respectively) and national origin discrimination in violation of title VII of the Civil Rights Act of 1964 (42 USC § 2000e [title VII]), the NYSHRL and NYCHRL (second, fourth and sixth causes of action, respectively).[5] Defendants move for an order pursuant to CPLR 3211 (a) (2) and (7) dismissing all but the first and second causes of action, solely to the extent these causes of action are predicated upon alleged wrongful conduct occurring prior to April 14, 2005,[6] and for failure to state a cause of action for a hostile work environment. Without making a cross motion, Khalil requested leave to amend the complaint if the court finds he did not sufficiently plead his causes of action.
Complaint
The unverified complaint sets forth the following factual averments which are assumed to be true for purposes of this motion. Khalil, who is now 70 years old and of Egyptian descent, “has worked in the Library field for over thirty (30) years” and has been employed by CUNY in that field since in or about 1989. (Complaint 1Í1Í 7, 10, 11.) In 1994, CUNY granted Khalil tenure and in 1999 promoted him to associate professor, effective 1996. (Id. lili 12, 13.) The complaint further alleges, in relevant part, as follows:
“In late 1999 and again in late 2000, plaintiff applied for a promotion to Full Professor. CUNY denied both applications” (id. 1Í1Í14-16);
“Plaintiff again applied for a promotion to Full Professor at the end of 2002. CUNY’s delay in determining the application resulted in intervention from plaintiffs union. Ultimately, CUNY denied the application in January 2006” (id. 1Í1Í17-19);
*780 “In 1999, Khalil was transferred from his position as a science librarian to a social science position. As this was not his area of specialization, he could not perform as well. All other librarians work in their area of specialization” (id. 1111 20, 21);
“Khalil is required to work extensive hours at the Reference Desk while younger, non-Egyptian librarians work fewer hours. As a result, Khalil has less time to work on publications which are necessary to be promoted” (id. U 22);
“In or about 2002, CUNY denied plaintiffs request for one month of reassignment leave at full pay to do research in Egypt. Upon information and belief, CUNY has granted similar requests of younger non-Egyptian librarians. Ultimately, CUNY granted plaintiff a six month sabbatical leave to conduct research in Egypt at half his salary” (id. HIT 23-25);
“At an August 2005 meeting, Robert Laurich (‘Laurich’), Khalil’s supervisor, made fun of him for seeking computer assistance from a technician rather than from his superiors and ‘yelled at and embarrassed Khalil in front of his colleagues.’ Later, when Khalil asked Laurich not to reprimand him publicly, Laurich shouted: ‘Get the hell out of my office, you old idiot’ and threatened to call security” (id. HH 27-32);
“In an evaluation of plaintiff as a 64 year old colleague, Pamela Gillespie (‘Gillespie’), CUNY’s Assistant Dean and Chief Librarian, wrote ‘Why don’t you retire?’ ” (id. 11 33); and
“An arbitrator found that Gillespie violated the collective bargaining agreement with plaintiffs union by inviting another librarian to sit in on a 2003 evaluation of plaintiff without his or his union’s consent. At other librarians’ evaluations, no third parties were present” (id. 1Í1I 35, 38, 39).
Motion to Dismiss a Complaint
On a motion to dismiss a complaint for failure to state a cause of action (CPLR 3211 [a] [7]), a court must take all of the complaint’s allegations as true and resolve all inferences that reasonably flow therefrom in favor of the plaintiff. (Cron v Hargro Fabrics, 91 NY2d 362 [1998]; Marini v D’Apolito, 162 AD2d 391 [1st Dept 1990].) Here, the scope of review is narrow and limited to determining whether the pleading states any cause of *781 action, and not whether there is evidentiary support for the complaint. (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]; Rovello v Orofino Realty Co., 40 NY2d 633, 634 [1976].) The complaint must be liberally construed in the light most favorable to the plaintiff and all factual allegations must be accepted as true. (Morone v Morone, 50 NY2d 481 [1980].)
The court must assume the complaint’s allegations are true and must deem the complaint to allege whatever can be reasonably inferred therefrom, however imperfectly or informally its facts may be stated. (Barrows v Rozansky, 111 AD2d 105 [1st Dept 1985]; see also McGill v Parker, 179 AD2d 98 [1st Dept 1992]; Blitman Constr. Corp. v Kent Vil. Hous. Co., 91 AD2d 173 [1st Dept 1983].) Accordingly, a motion to dismiss for failure to state a cause of action pursuant to CPLR 3211 is available only where the dispute pertains to law, not facts. (Abrams v Richmond County S.P.C.C., 125 Misc 2d 530 [Sup Ct, Richmond County 1984].)
Timeliness of Plaintiffs ADEA and Title VII Claims
Claims filed under both title VII and the ADEA must be filed with the Equal Employment Opportunity Commission (EEOC) within 300 days of the alleged unlawful act. (See 29 USC § 626 [d]; 42 USC § 2000e-5 [e] [1].) CUNY contends that since Khalil filed his EEOC complaint on February 8, 2006, any title VII or ADEA claims accruing prior to April 14, 2005 are time-barred. Thus, defendant argues that the only claims that are not time-barred are those pertaining to CUNY’s January 2006 denial of Khalil’s promotion application and the August 2005 incident wherein Launch allegedly reprimanded him in front of his colleagues and later called him an “old idiot.” Plaintiff counters that defendant’s motion should be denied on this ground based upon the continuing violations doctrine.[7]
Though not expressly delineated as such, Khalil’s complaint alleges two types of title VII and ADEA claims, namely, discrimination and a hostile work environment. For purposes of determining the timeliness of such claims, a distinction must be drawn between claims based upon discrete discriminatory acts and hostile work environment claims. In National Railroad
*782 Passenger Corporation v Morgan, the United States Supreme Court summarized the following principles derived from its prior case law:
“First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the . . . 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee’s prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.” (536 US at 113.)
The holding in National Railroad dictates that the acts alleged in the complaint which occurred prior to April 14, 2005[8] are time-barred as separate, unlawful employment practices. However, plaintiff may refer to these time-barred acts to support his timely claims. (See e.g. Holmes v Brentwood Union Free School Dist., 2006 WL 1581434, *2 n 1, 2006 US Dist LEXIS 41081, *5 n 1 [ED NY 2006] [where 10 of 11 promotion denials were time-barred as separate causes of action, plaintiff could still use the prior 10 denials as evidence of her employer’s intent behind the final timely denial].) Accordingly, Khalil’s discrimination claims under the ADEA (first cause of action) and title VII (second cause of action) for damages based upon each separate alleged act must be dismissed as to those acts which predate April 14, 2005.
Failure to State a Cause of Action for Hostile Work Environment
CUNY argues that plaintiffs hostile work environment claim fails to state a cause of action since it is based upon a single August 2005 incident when Laurich allegedly repri *783 manded Khalil in front of his colleagues and later called him an “old idiot.” Defendant contends this incident is not severe or pervasive enough to establish a hostile work environment claim. In opposition, Khalil asserts that his claim for recovery based upon an alleged hostile work environment is predicated upon a pattern and practice of harassment beginning in 1999 and culminating in the January 2006 promotion denial and these acts should be deemed a continuing violation.
As further stated, in relevant part, in National Railroad Passenger Corporation v Morgan (supra):
“Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct . . . The ‘unlawful employment practice’ therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. See Harris v. Forklift Systems, Inc., 510 U. S. 17, 21 (1993) (‘As we pointed out in Meritor [Savings Bank, FSB v. Vinson, 477 U. S. 57, 67 (1986),] “mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee,” ibid. (internal quotation marks omitted), does not sufficiently affect the conditions of employment to implicate Title VII’). Such claims are based on the cumulative effect of individual acts.” (536 US at 115.)
In determining whether an actionable hostile work environment claim exists, the court must examine the totality of the circumstances including “the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee’s work performance.” (Harris v Forklift Systems, Inc., 510 US 17, 23 [1993].) An actionable discrimination claim based on hostile work environment exists where “the workplace is permeated with ‘discriminatory intimidation, ridicule, and insult,’. . . that is ‘sufficiently severe or pervasive to alter the conditions of the victim’s employment and create an abusive working environment’ ” (id. at 21, quoting Meritor Savings Bank, FSB v Vinson, 477 US 57, 65, 67 [1986]).
The determination of hostility depends on whether a reasonable person would find the work environment to be hostile and whether a plaintiff subjectively perceived it to be so. (Brennan v Metropolitan Opera Assn., Inc., 192 F3d 310, 318 [2d Cir 1999].) *784 To establish a hostile work environment, plaintiff must prove that the incidents were sufficiently continuous and concerted to be considered pervasive and must also demonstrate that he was subjected to hostility because of his membership in a protected class. (Id.)
Isolated, minor acts or occasional episodes are generally insufficient to meet the threshold requirement of a hostile work environment. (Id.) However, a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiffs work place. (Alfano v Costello, 294 F3d 365, 374 [2d Cir 2002]; see also Hawkins v City of New York, 2005 WL 1861855, *15, 2005 US Dist LEXIS 15898, *41 [SD NY 2005] [a single isolated instance of harassment is insufficient to establish a hostile work environment claim unless it was “extraordinarily severe”].)
Here, the facts alleged do not support a hostile work environment claim. “[C]onduct must be extreme to amount to a change in the terms and conditions of employment.” (Faragher v Boca Raton, 524 US 775, 788 [1998].) The allegations on which Khalil relies are the same discrete acts, all unrelated, which form the basis of his discrimination claims. As CUNY argues, the incident when Laurich reprimanded plaintiff in front of colleagues and privately called him an “old idiot” is the only allegation which might qualify as “discriminatory intimidation, ridicule, and insult.” This single event is not “extraordinarily severe.” Nor are plaintiffs complaints of promotion denials, a position transfer outside his area of expertise, work assignments at the reference desk, denial of paid leave, etc., alone or cumulatively, severe or pervasive enough to create a change in the terms and conditions of plaintiffs employment.
As stated in Rattigan v Gonzales (503 F Supp 2d 56, 81-82 [D DC 2007]):
“Plaintiff should not be permitted to ‘bootstrap’ his alleged discrete acts of discrimination and retaliation into a broader hostile work environment claim . . . ‘Discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult.’ . . . ‘[T]he dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent. Such an action would significantly *785 blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address.’ . . . A hostile work environment under Title VII must be based on ‘one unlawful employment practice’ of pervasive, insulting, discriminatory conduct that makes the plaintiffs day-to-day work environment severely ‘abusive.’ . . . Therefore, cobbling together a number of distinct, disparate acts will not create a hostile work environment. For example, if an employee is discriminatorily denied ten promotions over a period of time, that pattern of conduct may give rise to ten separate claims under Title VII, but it would not create a hostile work environment claim based on pervasive intimidation, insult and ridicule.”
Even taking Khalil’s allegations as true and drawing all favorable inferences in his favor, plaintiff cannot state a claim for hostile work environment as the incidents he relies upon do not constitute one unlawful employment practice of intimidation, insult and ridicule permeating plaintiffs day-to-day working life. (National Railroad, 536 US at 117.) The facts alleged here are markedly distinct from those in Kassner v 2nd Ave. Delicatessen, Inc. (496 F3d 229 [2d Cir 2007]) where one of the plaintiffs withstood a motion to dismiss a hostile work environment cause of action brought under the ADEA by alleging that her employer’s owner and general manager “repeatedly made degrading comments towards [plaintiff], including, but not limited to, ‘drop dead,’ ‘retire early,’ ‘take off all of that makeup [,]’ and ‘take off your wig.’ ” (Id. at 240.) For all of the above reasons, the first and second causes of action are dismissed to the extent that they allege a claim for hostile work environment under the ADEA and title VII.
Plaintiffs NYCHRL Claims
Defendant argues the fifth and sixth causes of action for alleged violations of the NYCHRL must be dismissed because CUNY, as an instrumentality of the State of New York,[9] has sovereign immunity and may not be sued for monetary damages unless such immunity is specifically waived. Plaintiff does not dispute that CUNY is an instrumentality of New York State.
In opposition to the motion, plaintiff argues that the Eleventh Amendment, which bars suit in federal courts against a state or *786 its agencies absent abrogation by Congress or waiver by the state, does not bar Khalil’s NYCHRL claims since the action was brought in state court rather than federal court. CUNY contends that Khalil’s arguments miss the point inasmuch as CUNY does not assert immunity under the Eleventh Amendment. Rather, defendant argues that CUNY and other state entities have sovereign immunity independent of the Eleventh Amendment.
CUNY concedes “there is no reported state court decision which specifically dismisses a NYCHRL claim against a state agency.”[10] However, as stated in Moore v State of New York (42 Misc 2d 314, 317 [Ct Cl 1964]): “It is an uncontestable legal tenet that the State governs its municipalities and that a municipality may not encroach directly or indirectly upon the sovereign powers of the State, save by specific provision or unmistakable legislative intent to the contrary.” (Citations omitted.) Citing the foregoing proposition, defendant maintains that a state instrumentality cannot be liable under municipal laws and codes such as the NYCHRL without the State’s consent. This court agrees.
It is a well-established rule that general, local legislation is inapplicable to the State or its agencies unless there is express language subjecting the sovereign to the terms thereof. (Denton v State of New York, 72 App Div 248, 251-252 [3d Dept 1902]; Port of N.Y. Auth. v Linde Paper Co., 205 Misc 110, 114-115 [Mun Ct 1953] [arm and agency of the State held immune from rent laws]; Gould v State of New York, 196 Misc 488, 490 [Ct Cl 1949] [Labor Law and rules promulgated thereunder do not apply to State].) Here, as noted in dicta in New York federal court case law, the City of New York is not empowered to waive the State’s immunity and, even if it were, the NYCHRL lacks the language required to effectuate such a waiver. (Neilson v D’Angelis, 2002 US Dist LEXIS 25195, *16-17 [ED NY 2002]; Leiman v New York, 2000 WL 1364365, *7, 2000 US Dist LEXIS 13586, *22-23 [SD NY 2000] [dismissing NYCHRL claims against the State of New York and/or its agencies on Eleventh Amendment grounds], affd 9 Fed Appx 37 [2d Cir 2001].) As CUNY is not subject to the NYCHRL, Khalil’s fifth and sixth causes of action fail to state a cause of action and must be dismissed as a matter of law.
Finally, absent a proper motion with supporting papers including a proposed amended complaint, plaintiffs request for leave *787 to amend the complaint is denied. This court has considered the parties’ remaining claims and finds them to be lacking in merit.
Accordingly, it is hereby ordered that the motion is granted to the extent that the action is dismissed on consent as to defendants State of New York and City College and the caption and complaint are deemed amended accordingly; and it is further ordered that the first and second causes of action are severed and continued to the extent set forth above as to remaining defendant City University of New York; and it is further ordered that plaintiffs claim for punitive damages under the ADEA and title VII are withdrawn on consent and the complaint is deemed amended accordingly; and it is further ordered that portions of the first and second causes of action are dismissed to the extent that plaintiff is not entitled to seek damages for discrete acts of alleged discrimination which occurred prior to April 14, 2005; and it is further ordered that portions of the first and second causes of action are further dismissed to the extent that they fail to state a cause of action for a hostile work environment under the ADEA and title VII; and it is further ordered that the third and fourth causes of action are dismissed on consent; and it is further ordered that the motion is granted to the extent that plaintiffs fifth and sixth causes of action alleging NYCHRL violations are dismissed.

. Plaintiff commenced this action pro se, indicating that he prepared his complaint (exhibit A to motion) with the assistance of counsel, Michael A. Siskin, Esq. In opposing this motion, plaintiff now appears by David M. Fish, Esq.

. In response to defendants’ motion, plaintiff conceded that the only proper defendant in this action is his employer, the City University of New York (CUNY or defendant). Accordingly, plaintiff voluntarily withdrew all claims against the State of New York and City College and requested that the caption and complaint be amended accordingly.

. Executive Law § 296.

. Administrative Code of City of NY § 8-107.

. In opposition to the instant motion, Khalil voluntarily withdrew the third and fourth causes of action predicated upon alleged violations of the NYSHRL conceding that same were barred by the election of remedies doctrine based upon his prior filing of a complaint with the New York State Division of Human Rights. Khalil further conceded that he was not entitled to punitive damages under the ADEA and title VII.

. As more fully set forth infra, CUNY contends that plaintiffs claims are time-barred to the extent that they are based upon alleged discriminatory acts occurring prior to April 14, 2005.

. As discussed more fully infra, claims for a hostile work environment, which may involve a series of acts not actionable on their own, may properly include acts outside the 300-day period for purposes of establishing a hostile environment “[p]rovided that an act contributing to the claim occurs within the filing period.” (National Railroad Passenger Corporation v Morgan, 536 US 101, 117 [2002].)

. These acts include: the 1999 and 2000 promotion denials (complaint ¶¶ 14-16); the 1999 transfer from Khalil’s area of specialization (id. ¶¶ 20-21); the 2002 denial of reassignment leave at full pay and subsequent granting of sabbatical leave at half pay (id. ¶¶ 23-25); and the 2003 violation of the collective bargaining agreement in connection with plaintiffs evaluation (id. ¶¶ 35, 38, 39).

. CUNY is a public university established under Education Law § 6201 et seq.

. See defendants’ memorandum of law in further support at 3.